**Don EDWARDS et al.,**
**Plaintiffs,**

v.

**James R. SCHLESINGER, Individually, and as Secretary of Defense, et al.**
**Defendants.**

**Jerome WALDIE et al., Plaintiffs,**

v.

**James R. SCHLESINGER, Individually, and as Secretary of Defense, et al.,**
**Defendants.**

**Civ. A. Nos. 1825–73, 1826–73.**

United States District Court,
District of Columbia.

June 19, 1974.

As Amended July 11, 1974.

Virginia M. Dondy and Thomas S. Martin, Washington, D. C., for plaintiffs.

Royce Lamberth, Asst. U. S. Atty., Washington, D. C., for defendants.

## OPINION

GASCH, District Judge.

This matter came before the Court upon defendants' motion to dismiss or, in the alternative, for summary judgment. Plaintiffs cross-moved for partial summary judgment. Also pending before the Court is plaintiffs' motion for certification of the class which plaintiffs seek to represent. In order to set the background for a discussion of the issues raised by these motions, a chronological development of the suit is set forth below.

### I.

Plaintiffs filed these two actions on September 26, 1973, seeking declaratory relief, an injunction and damages against the United States Air Force Academy (C.A. No. 1825–73) and the United States Naval Academy (C.A. No. 1826–73) for their alleged unconstitutional failure to consider women for appointment to those service academies. Extensive discovery followed.

On March 11, 1974, plaintiffs filed a motion, pursuant to local rule 1–13(b),

to certify the class. On April 29, 1974, the defendants moved to dismiss the complaints, or, in the alternative, for summary judgment. At the same time, defendants also moved to consolidate the two actions. Plaintiffs cross-moved for summary judgment May 15, 1974, and a hearing was held June 4, 1974, at which time the motions were taken under advisement. On June 14, 1974, plaintiffs moved for a temporary restraining order, and a hearing was held that same day. By Order dated June 14, the Court denied the request for a temporary restraining order, for reasons set forth therein. At the same time, the Court ruled on defendants' motion for consolidation, granting the same insofar as the Naval and Air Force Academies were concerned.[1]

The facts as presented by the various motions and oral arguments are as follows: Plaintiffs in each case are two Congressmen who have nominated female applicants for the respective academies. Also named as party plaintiff in each case is one female nominee. Plaintiffs allege that those individuals nominated who are female are routinely refused consideration for appointment to the Academy, to the detriment of their rights under the Equal Protection Clause of the Fourteenth Amendment and Due Process Clause of the Fifth Amendment to the Constitution.[2]

There is no doubt that neither the Air Force Academy nor the Naval Academy will consider a female nominee. Air Force regulations provide that an "[a]pplicant must be a male citizen of the United States."[3] Likewise, Navy regulations indicate that "candidates for admission to the U. S. Naval Academy must be male citizens of the United States."[4] In light of the fact that

---

1. Prior to consolidation, of course, plaintiffs filed parallel papers in each of the two cases. The discussion herein will apply to both Academies, except where noted; for ease of reference, filings in C.A. No. 1825–73 will be referred to as *Edwards* and filings in C.A. No. 1826–73 will be referred to as *Waldie*.

2. Plaintiffs' Opposition to Defendants' Motion for Summary Judgment, filed May 15, 1974, *Edwards* at 19, *Waldie* at 17. *See* Bolling v. Sharpe, 347 U.S. 497, 499, 74 S. Ct. 693, 98 L.Ed. 884 (1954).

3. 32 C.F.R. § 901.5.

4. 32 C.F.R. § 710.12.

selections to the Academies are made during the spring of each year, the parties agreed that five positions at each Academy should be held open pending the outcome of this lawsuit or until June 18, 1974, whichever came earlier.[5]

Because oral argument could not be held until June 4, 1974, and the case having been taken under advisement at that time, plaintiffs moved for a temporary restraining order June 14, asking this Court to extend for 10 days the period open for possible appointment of women. The Court, finding no irreparable injury or probability of success on the merits, denied that motion.[6]

The fundamental question raised by this lawsuit is whether or not plaintiffs suffer a deprivation of constitutional rights through the policy of the Air Force and Naval Academies. As will be seen below, this question is not susceptible to a simple solution. Before discussing this issue, however, the motion to certify the class will be dealt with.

## II.

Plaintiffs seek to maintain these suits as class actions, on behalf of "all past, present, and future female applicants to the U. S. Air Force [and Naval] Academy who have been, are being, and will be denied admission by the discriminatory practices complained of herein."[7] The class is of the type described by Fed.R.Civ.P. 23(b)(2):

the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making

appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole;
.    .    .    .

At the outset, it should be noted that plaintiffs' motion is untimely. Local rule 1–13(b) provides that "[w]ithin 90 days after the filing of a complaint . . . plaintiff shall move for a certification under Rule [Fed.R.Civ.P.] 23(c)(1) . . . ." The complaints in these cases were filed September 26, 1973, but the motions to certify the class were not filed until March 11, 1974.

Proceeding to the merits of certifying the class, it can be seen that the group of people sought to be included is ill-defined, particularly with respect to those "future" members of the class. Notice, a desirable, although not required, element, would be impossible.[8] This Court adheres to the view that where injunctive and declaratory relief is requested, such relief, where appropriate, can be fashioned to run to the benefit of those sought to be included in the class.[9] In light of this, no compelling reason is presented to complicate the lawsuit by certification of the class, and the speedy resolution of the issues presented here would be aided by proceeding with the named plaintiffs only.

## III.

The preliminary question which must be resolved in order to deal with the merits of this case is what standard should be applied to the Air Force and Naval Academies' refusal to consider

---

5. See letter of April 5, 1974, from Earl J. Silbert to Thomas S. Martin, attached to plaintiffs' motion for a temporary restraining order dated June 14, 1974.

6. See Order of June 14, 1974.

7. *Edwards* complaint at 3–4; *Waldie* complaint at 3–4.

8. Fed.R.Civ.P. 23(c) requires notice only where a (b)(3) class is concerned. Some courts, including this one, have found that due process can require that a (b)(1) or (b)(2) class receive notice also. Arey v.

Providence Hospital, 55 F.R.D. 62, 70 (D. D.C.1972).

9. Kinsey v. Legg, Mason & Company, Inc., 60 F.R.D. 91, 100–101 (D.D.C.1973); National Welfare Rights Organiation v. Dep't of H. E.W., C.A. 264–73 (D.D.C. October 16, 1973), slip op. at 9. In Bridgeport Guardians, Inc. v. Members of Bridgeport Civil Service Comm'n, 354 F.Supp. 778 (D.Conn. 1973), the court found that as "any equitable relief to which plaintiffs may be entitled would benefit all persons similarly situated, there is no compelling reason to designate a class." 354 F.Supp. at 783.

women for admission to those institutions. The choice, of course, is between the "rational relation to a legitimate governmental interest" test,[10] and, in the case of a "suspect classification," the "compelling state interest" test.[11] The difference in stringency between the two tests is significant. Plaintiffs have pressed strenuously upon the Court an argument that the latter test should be applied; for reasons set forth below, it is the Court's conclusion that the "rational relationship" test should be applied.

In Reed v. Reed, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971), the Supreme Court considered the constitutionality of the Idaho probate code, which provided that within the various classes of persons eligible to administer a decedent's estate, "males must be preferred to females . . . ."[12] Idaho justified the statute on the grounds that the automatic preference of males reduced the workload of the probate courts by eliminating one area of contest in the course of probate.[13] The Court measured this objective by asking "whether a difference in the sex of competing applicants for letters of administration bears a rational relationship to [the] state objective that is sought to be advanced by . . . § 15–314."[14] Applying this test, the Court concluded that reducing the courts' workload by eliminating equal consideration of females with males for letters of administration was

not "consistent with the command of the Equal Protection Clause."[15]

The importance of *Reed* becomes apparent when one reads Frontiero v. Richardson, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973). *Frontiero* involved a challenge to the constitutionality of four statutes[16] which provided that wives of male members of the armed forces were to be automatically considered dependents for the purposes of increased housing allowances and medical and dental benefits, but in the case of husbands of female members, they were to be so considered only if the servicewoman was able to prove that her husband was dependent upon her for more than one-half of his support.

Justice Brennan, with three Justices concurring, concluded that sex should join race,[17] alienage,[18] and national origin[19] as an inherently suspect classification, thus imposing "strict judicial scrutiny" upon any sex-based classification.[20] In so concluding, the plurality opinion found "at least implicit support for such an approach in our unanimous decision . . . in Reed v. Reed . . . ."[21] This implicit support stemmed from the following language in *Reed*:

> To give a mandatory preference to members of either sex over members of the other, merely to accomplish the elimination of hearings on the merits, is to make the very kind of arbitrary

---

10. *See* Jefferson v. Hackney, 406 U.S. 535, 546, 92 S.Ct. 1724, 32 L.Ed.2d 285 (1972); Richardson v. Belcher, 404 U.S. 78, 81, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971); Dandridge v. Williams, 397 U.S. 471, 485, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); McGowan v. Maryland, 366 U.S. 420, 426, 81 S.Ct. 1011, 6 L.Ed.2d 393 (1961); Flemming v. Nestor, 363 U.S. 603, 611, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960).

11. *See* Graham v. Richardson, 403 U.S. 365, 372, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971); Loving v. Virginia, 388 U.S. 1, 11, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967); Oyama v. California, 332 U.S. 633, 644–646, 68 S.Ct. 269, 92 L.Ed. 249 (1948).

12. 15 Idaho Code § 314.

13. 404 U.S. at 76, 92 S.Ct. 251.

14. *Id.*

15. *Id.*

16. 37 U.S.C. §§ 401, 403; 10 U.S.C. §§ 1072, 1076.

17. Loving v. Virginia, 388 U.S. 1, 11, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967).

18. Graham v. Richardson, 403 U.S. 365, 372, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971).

19. Oyama v. California, 332 U.S. 633, 644–646, 68 S.Ct. 269, 92 L.Ed. 249 (1948).

20. 411 U.S. at 682–688, 93 S.Ct. 1764.

21. *Id.* at 682, 93 S.Ct. at 1768.

legislative choice forbidden by the Equal Protection Clause . . . .[22] Justice Brennan felt that this represented a "departure from 'traditional' rational basis analysis . . . ."[23] Relying on this, the plurality opinion concluded that "any statutory scheme which draws a sharp line between the sexes, *solely* for the purpose of achieving administrative convenience . . . involves the 'very kind of arbitrary legislative choice forbidden by the [Constitution] . . . .' Reed v. Reed . . . ."[24]

Justice Stewart concurred in the result, "agreeing that the statutes before us work an invidious discrimination in violation of the Constitution."[25] relying on *Reed*. Also placing reliance on *Reed* was Justice Powell, who was joined in his concurring opinion by the Chief Justice and Justice Blackmun. Justice Powell argued vigorously that "[i]t is unnecessary for the Court in this case to characterize sex as a suspect classification, with all of the far-reaching implications of such a holding."[26] The Court, said Justice Powell, "can and should decide this case on the authority of Reed and reserve for the future any expansion of its rationale."[27]

Thus, sex was not clearly made an inherently suspect classification, as only four members of the Court were willing to apply strict judicial scrutiny to such classifications. Four members clearly were not.[28] Plaintiffs argue that the correct interpretation of *Frontiero* is that classifications based on sex should be examined as Justice Brennan suggests, with strict judicial scrutiny;[29] defendants argue that the rational relationship test explicitly applied in *Reed* should govern. In order to resolve this, review of a more recent sex discrimination case is helpful.

In Kahn v. Shevin, 416 U.S. 351, 94 S.Ct. 1734, 40 L.Ed.2d 189 (1974), the Supreme Court found valid a Florida statute which provided a $500 annual property tax exemption for widows. The statute had been attacked by petitioner, a widower, on the ground that there was no analogous benefit for widowers. Justice Douglas, speaking for the majority,[30] found that, unlike *Frontiero*, where the sole ground for the sex-based classification was administrative convenience, *Kahn* involved "a state tax law reasonably designed to further the state policy of cushioning the financial impact of spousal loss upon the sex

---

22. 404 U.S. at 76, 92 S.Ct. at 254.

23. 411 U.S. at 684, 93 S.Ct. at 1769.

24. *Id.* at 690, 93 S.Ct. at 1772.

25. *Id.* at 691, 93 S.Ct. at 1772. It should be noted that "invidious discrimination" has elsewhere been applied in the context of a "rational relation" or "reasonable relation" test. Lehnhausen v. Lake Shore Auto Parts Co., 410 U.S. 356, 359, 93 S.Ct. 1001, 35 L. Ed.2d 351 (1973).

26. 411 U.S. at 691–692, 93 S.Ct. at 1773. The concurring opinion went on to argue that because the Equal Rights Amendment is currently in the process of being ratified by the states, "reaching out to pre-empt by judicial action a major political decision . . . does not reflect appropriate respect for duly prescribed legislative processes." *Id.* at 692, 93 S.Ct. at 1773.

27. *Id.*

28. Justice Rehnquist dissented. *Id.* at 691, 93 S.Ct. 1764.

29. This contention was apparently rejected in United States v. Offord, 373 F.Supp. 1117 (E.D.Wis.1974). Suit was brought seeking to declare the Selective Service laws unconstitutional as an impermissible discrimination based on sex. The court indicated that the plurality opinion of *Frontiero* did not make clear whether or not sex is now a suspect classification.

In any event, the court there found that the statutes involve a "governmental interest [that] is so extremely urgent that courts must show the greatest deference to congressional judgment." 373 F.Supp. 1117, 1118. The *Offord* court, of course, was without the benefit of Kahn v. Shevin, 416 U.S. 351, 94 S.Ct. 1734, 40 L.Ed.2d 189 (1974).

30. Justice Douglas was joined by the Chief Justice and Justices Stewart, Blackmun, Powell and Rehnquist.

for whom that loss imposes a disproportionately heavy burden." [31]

No intimation of a strict judicial standard is present in *Kahn*. In fact, the Court went on to note that another tax case, Allied Stores v. Bowers, 358 U.S. 522, 79 S.Ct. 437, 3 L.Ed.2d 480 (1959), provided that a statute that "may discriminate in favor of a certain class [is not] arbitrary if the discrimination is founded upon a *reasonable* distinction or difference in state policy." [32] In fact, when discussing the dissents, the majority opinion did not even come to grips with Justice Brennan's continuing assertion that gender-based classifications, "like classifications based upon race, alienage, and national origin, must be subjected to close judicial scrutiny . . . ." [33]

Joined by Justice Marshall, Justice Brennan again urged upon the Court that sex is a suspect classification, concluding, however, that the Florida statute could serve a compelling governmental interest if more narrowly drafted.[34] In a separate dissent, Justice White concluded that "gender-based classifications are suspect" [35] and that Florida had not

made a sufficient showing to justify continuing the distinction.

It may be argued that *Kahn* should not be given a general interpretation, but rather should be limited to the field of taxation, based upon the majority opinion's reference to Lehnhausen v. Lake Shore Auto Parts Co., 410 U.S. 356, 93 S.Ct. 1001, 35 L.Ed.2d 351 (1973), where the Court said that "[w]here taxation is concerned and no specific federal right, apart from equal protection, is imperiled, the States have large leeway in making classifications . . . ." [36] The Court does not consider this narrowing argument controlling. Reference to *Lehnhausen* shows that that quotation is not in the context of tax cases alone.[37]

The conclusion to be drawn from *Kahn* is that the Supreme Court has not declared sex to be an inherently suspect classification. Indeed, *Kahn* seems to indicate that only three Justices currently share this view. Therefore, the rational relationship test is the one properly to be applied to the matters before the Court.[38]

---

31. 416 U.S. at 355, 94 S.Ct. at 1737. In support of this conclusion, the Court relied upon data showing that median earnings among women and the percentage of women working full-time are substantially below similar figures for men. *Id.*, nn. 4–7.

32. 358 U.S. at 528, 79 S.Ct. at 441 (emphasis added).

33. 416 U.S. at 357, 94 S.Ct. at 1738 (footnotes omitted).

34. *Id.* at 359, 94 S.Ct. 1734.

35. *Id.* at 361, 94 S.Ct. 1734.

36. 410 U.S. at 359, 93 S.Ct. at 1003. (footnote omitted). *See* 416 U.S. at 353–356, 94 S.Ct. 1734.

37. 410 U.S. at 359, 93 S.Ct. at 1003.

38. This appears to be the view of at least one other District Court. In White v. Flemming, 374 F.Supp. 267 (E.D.Wisc. 1974), Chief Judge Reynolds of the Eastern District of Wisconsin applied the "rational relationship to a legitimate legislative objective" test while considering whether a city ordinance prohibiting female tavern employees from sitting with male patrons invid-

iously discriminated against women. The court, clearly applying the standard of rationality, found that the ordinance had not advanced in a reasonable manner any legitimate legislative objective.

The Court notes that at least two District Courts have followed Justice Brennan in applying strict judicial scrutiny to sex classifications. *See* Ballard v. Laird, 360 F.Supp. 643, 647 (S.D.Cal.1973), and Wiesenfield v. Secretary of Health, Education and Welfare, 367 F.Supp. 981, 990 (D.N.J.1973). Both of these *decisions preceded Kahn*; White v. Flemming, noted above, was subsequent to *Kahn.*

In *Wiesenfield*, a three-judge court was convened to consider whether the provision for payment of "mother's insurance benefits" by the Social Security Administration unconstitutionally discriminated against a father whose wife had died in childbirth. The court applied strict judicial scrutiny, determining that 42 U.S.C. § 402(g) discriminated against women who gained employment as well as men and children who had lost their wives and mothers, the court determined that § 402(g) could pass the "traditional" equal protection standard of rationality, but

## IV.

█ Although no statute specifically bars women from any service academy, defendants urge that those statutes relating to the Air Force and Naval Academies always use the masculine pronoun, and, when read with legislative history, indicate Congress has always intended that only men be admitted. The Court is mindful of 1 U.S.C. § 1, which prohibits the practice of excluding the female gender from statutory language using male pronouns only, except where "the context indicates otherwise." Nothing in the contexts of 10 U.S.C. §§ 6958 or 9346 indicate that males only must be considered.[39]

The defendants do, however, make a convincing argument that the exclusion of women from the Academies is rationally related to a legitimate governmental interest when 10 U.S.C. §§ 6015 and 8549 are considered. Those statutes provide:

. . . However, women may not be assigned to duty in aircraft that are engaged in combat missions nor may they be assigned to duty on vessels of the Navy other than hospital ships and transports. 10 U.S.C. § 6015.

Female members of the Air Force . . . may not be assigned to duty in aircraft engaged in combat missions. 10 U.S.C. § 8549.

Deputy Secretary of Defense William Clements has stated that "[t]he primary function of the three Service Academies is, and always has been to train military officers for combat duty."[40]

In the case of the Air Force Academy, the Superintendent, Lt. Gen. A. P. Clark, has said that "[t]his institution is primarily dedicated to the production of combat leadership for the future Air Force."[41] Much has been made by plaintiffs of the fact that an average of 17 percent of the cadets admitted to the Academy are not physically qualified to

---

failed when measured by "strict judicial scrutiny."

The court applied Justice Brennan's standard despite the fact that earlier discussion of the current controlling standard had concluded that

[w]hile a decision by a divided Court is as final on all issues of the case as a decision by a unanimous court the reasoning employed by a plurality does not become law. *Frontiero* demonstrates that a majority of the Supreme Court has not yet classified sex as "inherently suspect." 367 F.Supp. at 988 (footnote omitted).

The court further rejected the suggestion put forth by some that *Frontiero* and *Reed* have created a sort of "intermediate test" for cases of discrimination based on sex:

In *Reed* and *Frontiero* we do not discern a "general shift" of standards nor the establishment of a "new intermediate" equal protection test, and we reject those cases which adopt such standards. *Id.*

The court concluded that "we cannot be absolutely certain how statutory sex discrimination fits within equal protection doctrine." *Id.* In the milieu of this uncertainty, the court determined to apply Justice Brennan's strict standard.

As noted above, the learned discussion of Judge Fisher preceded the Supreme Court decision in Kahn v. Shevin. In light of that case, as the text of the present Opinion points out, the current state of the law is such that the *Frontiero* standard should not be applied.

39. Indeed, the only provisions that clearly exclude women from appointment are 10 U.S.C. §§ 6954(a)(1) and (8), 6954(b)(1), 6954(c), 9342(a)(1), 9342(b)(1), and 9342(c). These are all sections which use the word "sons" rather than any male pronoun or noun subject to the interpretation of 1 U.S.C. § 1. No such word use is encountered, however, in 10 U.S.C. §§ 6958 and 9346, the sections which discuss qualifications for admission. Indeed, at the request of the House Armed Services Committee, the Department of Defense determined that "[n]one of the statutes relating to any of the three service academies require a person to be male in order to be eligible for nomination or appointment to the academies." Hearings on Cost Escalation in Defense Procurement Contracts and Military Postures and H.R. 6722 before the House Committee on Armed Services, 93rd Cong., 1st Sess., pt. 3 at 2307 (1973).

40. Affidavit of William Clements, April 23, 1974, at 2, attached as Exhibit 1 to Defendants' Motion to Dismiss of April 29, 1974 [hereinafter cited as Clements Affidavit].

41. Affidavit of Lt. Gen. A. P. Clark, April 19, 1974, at 2, attached as Exhibit 3 to Defendants' Motion to Dismiss of April 29, 1974 [hereinafter cited as Clark Affidavit].

*go on to flight school.*[42] While this appears to be the case, Lt. Gen. Clark's references to the combat role of Academy graduates is persuasive:

> At least 70% of Academy Graduates go on to flying schools. All Air Force air crews are eligible for combat assignments. Special problems are created for prospective female candidates in view of the law which prohibits women from serving as crew members on air-craft destined for combat. The balance of the class membership, many of whom are not accepted for flying training as a result of physical disqualifications, nevertheless receive the full spectrum of military training offered by the Academy. A portion of this group will become missile control officers, a combat related assignment not presently open to females as a matter of policy. The remaining Academy graduates may never fly or navigate a war plane into the combat arena or launch a missile against an enemy target, but each is fully qualified to lead men in any other combat situation into which they may find themselves thrust as a consequence of the role they must assume as military leaders.[43]

As a matter of law and policy, women in the United States armed forces are not assigned to active combat roles. Since it is the purpose of the Air Force Academy to train officers for combat, limiting admissions to men at that institution is rationally related to fulfillment of that goal.

In the case of the Naval Academy, Vice Admiral William P. Mack, Superintendent of that institution, has stated that:

> The mission of the Naval Academy is to prepare young men to be professional officers in the Navy or Marine Corps. For 125 years, the Academy has produced for the naval service the highest caliber unrestricted line officers, that is, officers trained for eventual command at sea or in combat arms. With the exception of the admission of certain foreign nationals to the Academy, no person is appointed a midshipman at the Naval Academy who, at the time of appointment, cannot in due course qualify for commission as an officer of the unrestricted line in the Navy or Marine Corps.[44]

Because all midshipmen admitted to the Academy are expected to serve as line officers on combat vessels, the proscription of 10 U.S.C. § 6015 would mean that women simply could not fulfill the role of an Annapolis graduate and also comply with the requirements of that statute. No attack has been made on the constitutionality of that statute or 10 U.S.C. § 8549, thus showing that the government can rationally relate its policy of limiting admissions to men at the Naval Academy to the legitimate governmental interest of preparing an adequate number of unrestricted line officers for duty at sea.

In the case of the Naval Academy, admission of women would necessarily mean a decrease in the number of male graduates who would be expected to serve on combat vessels, because the Academy is limited in its enrollment. It can readily be seen that admission of women would be detrimental to the maintenance of an adequate officer complement for sea duty.[45]

## V.

Approaching the question from yet another standpoint, it is clear that the *Reed* and *Frontiero* decisions were con-

---

42. See Brief in Support of Plaintiffs' Motion for Partial Summary Judgment at 41. The physical disqualification in these instances is eyesight.

43. Clark Affidavit at 3.

44. Affidavit of Vice Admiral William P. Mack, April 22, 1974, at 2, attached as Exhibit 2 to Defendants' Motion to Dismiss of April 29, 1974 [hereinafter cited as Mack Affidavit].

45. Mack Affidavit at 7. The same would be true of the Air Force Academy, of course, as there too the total enrollment is limited.

cerned with classifications based on sex with no justification other than ease of administration. In *Reed,* the Court noted that "[c]learly the objective of reducing the workload on probate courts by eliminating one class of contests is not without some legitimacy. The crucial question, however, is whether [the statute] advances that objective in a manner consistent with the command of the Equal Protection Clause. We hold that it does not." [46] In *Frontiero,* Justice Brennan said that "any statutory scheme which draws a sharp line between the sexes, *solely* for the purpose of achieving administrative convenience, necessarily . . . involves the 'very kind of arbitrary legislative choice forbidden by the [Constitution] . . . .' " [47] Finally, in *Kahn,* this same language was repeated by Justice Brennan in dissent, while the majority said: "This is not a case like Frontiero v. Richardson, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583, where the Government denied its female employees both substantive and procedural benefits granted males 'solely for administrative convenience.' " [48]

The government has clearly demonstrated that far more than administrative convenience is involved in the policy to admit only men to the Air Force and Naval Academies. As did the Supreme Court in *Kahn,* this Court concludes that the admissions policy of the Navy and Air Force Academies is reasonably related to furthering a legitimate governmental interest—the preparation of young men to assume leadership roles in combat where necessary to the defense of the nation.[49]

46. 404 U.S. at 76, 92 S.Ct. at 254.

47. 411 U.S. at 690, 93 S.Ct. at 1772, quoting from Reed v. Reed, 404 U.S. at 76, 92 S.Ct. at 254 (emphasis in original).

48. 416 U.S. at 355, 94 S.Ct. at 1737 (emphasis in original).

49. The Court notes that the result reached here does not mean that women are ineligible for educational programs leading to both a bachelor's degree and a military commission. Both the Air Force and the Navy have R.O.T.C. programs at many fully ac-

credited four-year colleges and universities. As deputy Secretary of Defense Clements noted:

The Reserve Officers Training Corps scholarship program has recently been opened to women. Through this program, young women may acquire their college education and military training at schools having co-educational facilities and offering the flexibility of courses to meet both their needs and the needs of the respective Services.

Clements Affidavit at 4.