Janice **BRAY** et al.

v.

Joseph **LEE** et al.

Civ. A. No. 70–2002–C.

United States District Court,
D. Massachusetts.

Feb. 24, 1972.

---

Walter Jay Skinner, Matthew Feinberg, Boston, Mass., for plaintiffs.

Edith Fine, City of Boston Corp. Counsel, Law Dept., Boston, Mass., for all defendants except Girls Latin School.

William F. Looney, Jr., Moulton, Looney, Mazzone, Falk & Markham, Boston, Mass., amicus curiae for Girls Latin Alumnae Association.

## OPINION

CAFFREY, District Judge.

This is a civil action brought pursuant to the Civil Rights Act, 42 U.S.C.A. § 1983 et seq. Jurisdiction of this court is invoked pursuant to 28 U.S.C.A. § 1343. Plaintiffs, who are female students in the Boston public school system, seek permanent injunctive and declaratory relief against respondents, the members of the Boston School Committee, the Superintendent of Schools, the Headmaster of Boston Latin School, the Headmistress of Girls Latin School, and the Chief Examiner of the Boston Board of Examiners.

Briefly stated, the plaintiffs, who bring this action through their next friends, are a group of girl students, each of whom took the examination in March 1970 for admission as seventh grade students to the Girls Latin School for the academic year beginning in September 1970. Plaintiffs allege, and I find, that they are representatives of a class with an outside figure of 177 members, all of whom took the same examination for admission to Girls Latin School in September 1970, scored from 120 to 133, and, nevertheless, were not admitted in the fall of 1970. In their complaint plaintiffs allege that the various respondents illegally discriminated against them on the basis of their sex, for the reason that a boy who applied for admission to Latin School for the school year beginning September 1970 was admitted if he made a score on the examination of 120 or better out of a possible 200 points. Plaintiffs further allege that a girl who took the same examination was required to score 133 or better in order to gain admission at the same time to Girls Latin School. The accuracy of these factual representations is conceded by respondents.

The matter was submitted to a United States Magistrate on the basis of plaintiffs' motion for summary judgment and, after hearing, the Magistrate recommended to this court that the plaintiffs be admitted to "the Latin School without further competitive examination for the school year beginning September 1972." The court thereafter held a hearing on the Magistrate's recommendation.

It was further agreed by counsel that the normal procedure is for the Latin schools to admit new students either to begin as seventh grade students, as these girls would have if they had successfully passed the examination given in 1970, or as ninth grade students. Because of the lapse of time and because these girl students are now all eighth grade students, the relief they seek herein is admission next September as ninth grade students. Admission after the ninth grade is concededly impracticable because of curriculum content.

After the hearing on objections to the Magistrate's recommendations, this court directed counsel for the City of Boston to determine how many of the 177 girl members of the class described in the complaint (which complaint was filed on December 30, 1970) presently wish to be admitted as ninth grade students to the Girls Latin School. Counsel were also directed to determine how many seats are available for entering ninth grade students in the Latin school in September 1972, and to determine what would have been the cut-off mark in the examination given in March 1970 for admission as a seventh grade student in September 1970 had not different cut-off marks been used by the school authorities to determine which boys and which girls qualified for admission. Counsel thereafter reported to the court by way of stipulation, (1) that 95 members of the class are still desirous of entering the Latin school as ninth grade students in September 1972; (2) that there will be approximately 200 seats available in September 1972 for entering ninth grade students; and (3) that had the Boston school authorities used the same passing mark for boys and girls in March 1970 to determine their eligibility for admission to the Latin school that passing mark would have been a score of 127 or better out of a possible 200.

To further understand the working and application of the admissions test, it should be noted that the Boys Latin building has a seating capacity for approximately 3,000 students and the Girls Latin building has a seating capacity for approximately 1,500 students. Because of the disparity in the seating capacity of the two buildings, the Boston School Department, in evaluating the results of examinations in the past, first made a determination of how many seats were available in the boys building. They then counted down from the top possible score of 200 until they had accepted a number of boys equal to the number of available seats for the following September. This established the cut-off mark for the admission of boys which, in 1970, turned out to be a mark of 120 out of a possible 200. Any boy who scored 120 or higher was then admitted to Boys Latin school for the school year beginning in September 1970.

Using the same technique with reference to the number of seats available in Girls Latin School, the School Department evaluated the result of the girls' examination by counting down from 200 until they reached a number equal to the number of seats available in September 1970 and thus determined that the cut-off mark for girls, because of the lesser number of seats available, was 133 out of a possible 200.

In response to a direction from the court, the School Department made a computation, the accuracy of which has been stipulated to by counsel for the plaintiffs, that in September 1970 a combined total of 648 seats were filled by incoming seventh grade students at the Boys and Girls Latin schools, and a further determination was made that had the School Department not used separate cut-off marks for boys and girls, but, on the contrary, had used one cut-off mark for both boys and girls measured by the available 648 seats, the cut-off for both boys and girls on a merged basis would have been a score of 127 out of the possible 200.

■ On February 14, the court directed the School Department to send a letter to the parents of each of the 177 potential plaintiffs asking the parents if they still wished their daughter to be admitted to Latin school in the fall of

1972. At a conference held this date, counsel for the parties stipulated that of the 95 plaintiffs who have responded affirmatively to the questionnaire only 47 received a score of 127 or better. Accordingly, I find that only 47 of the plaintiffs would have been admitted as seventh grade students in September 1970 had the test results been evaluated without using different cut-off marks for boys and for girls, and I find that these are the only plaintiffs presently entitled to relief.

As noted above, counsel for the parties stipulated that in September 1972 there will be available approximately 200 seats for ninth grade students. Had the plaintiffs herein who scored 127 or higher been admitted in September 1970, as they would have been if the one test had been used for boys and girls, they, for all that appears, would presently be eighth grade students in Latin school, with the result that next September there would be only 150 seats available for incoming ninth grade students. The materiality of this observation is to point out that to now grant admission to approximately 50 of the plaintiffs who would have been admitted in 1970 absent the use of a double standard, is not to discriminate against those eighth grade students who now take the examination for admission in 1972 as ninth grade students.

■ On the basis of the foregoing, I rule that the use of separate and different standards to evaluate the examination results to determine the admissibility of boys and girls to the Boston Latin schools constitutes a violation of the Equal Protection Clause of the Fourteenth Amendment, the plain effect of which is to prohibit prejudicial disparities before the law. This means prejudicial disparities between all citizens, including women or girls. I further find that on the basis of the record of this case female students seeking admission to Boston Latin School have been illegally discriminated against solely because of their sex, and that discrimination has denied them their constitutional right to an education equal to that offered to male students at the Latin school.

It should be noted that subsequent to the filing of the instant complaint the Massachusetts Legislature enacted a law captioned "Chapter 622 of the Acts of 1971," which in pertinent part provided:

*Section 5.* Every child shall have a right to attend the public schools of the town where he actually resides, subject to the following section. No child shall be excluded from or discriminated against in admission to a public school of any town, or in obtaining the advantages, privileges and courses of study of such public school on account of race, color, sex, religion, or national origin.

This bill was signed into law by the Governor on August 6, 1971.

■■ On the basis of this law, respondents argue that there is no need for injunctive relief herein. The short answer to this contention is two-fold, (1) this court judicially notices that there is presently pending before the Massachusetts Legislature a bill to repeal so much of this law as applies to Boys Latin School and Girls Latin School in Boston, which bill has been the subject matter of spirited hearings within the past week; (2) the mere existence of a law, unfortunately, is no guarantee that it will be complied with by all persons subject thereto.

Accordingly, respondents are permanently enjoined from hereafter using a different standard to determine the admissibility of boys and girls, and are affirmatively ordered to use the same standard for admission of boys and girls to any school operated by the City of Boston, including the Boston Latin School.

With regard to specific relief herein, it is ordered that all 47 plaintiffs who scored 127 or higher in the March 1970 examination be admitted in September 1972 to the Boston Latin school without the necessity of taking the ninth grade examination. (This ruling is without prejudice to the right of any plaintiff to

take such examination voluntarily if she elects to do so.)

Finally, it has been stipulated by counsel that only one of the four named plaintiffs scored 127 or higher, one of the others having scored 126 and two having scored 124. This court is not aware of any legal grounds on the basis of which it can order respondents to admit as ninth grade students the one student who scored 126 and the two who scored 124. Despite counsel's urging that they should receive this consideration because they had the initiative to begin this lawsuit which has vindicated the rights of the entire class, I rule that to extend the court's order to these three girls would be to deny equal protection of the laws to any of the 48 remaining girls who scored between 124 and 126 in the March 1970 examination.

An order will be entered in accordance with this opinion.