520 F.2d 492
 10 Fair Empl.Prac.Cas. 1380,
10 Empl. Prac. Dec. P 10,263
Elizabeth A. SMITH, on behalf of herself and all others
similarly situated, Plaintiff-Appellee,
v.
Robert TROYAN et al., Defendants-Appellants.
Elizabeth A. SMITH, on behalf of herself and all others
similarly situated, Plaintiff-Cross-Appellant,
v.
CITY OF EAST CLEVELAND et al., Defendants-Cross-Appellees.
 Nos. 73-2226, 73-2227.
 United States Court of Appeals,
Sixth Circuit.
 July 3, 1975.
 
 Henry B. Fischer, Director of Law, East Cleveland, East Cleveland, Ohio, James P. Mancino, Cleveland, Ohio, Charles T. Riehl, Walter, Haverfield, Buescher & Chockley, Cleveland, Ohio, for Robert Troyan and others.
 Rita Page Reuss, Chief Counsel, Women's Law Fund, Jane M. Picker, Cleveland, Ohio, Michael L. Haase, Cleveland, Ohio, for Elizabeth A. Smith.
 Before WEICK, CELEBREZZE and PECK, Circuit Judges.
 JOHN W. PECK, Circuit Judge.
 
 
 1
 Plaintiff-appellee, a five-foot, five-inch, 136-pound black woman, filed in district court a class action against certain "city defendants"[1] and certain "federal defendants"[2] charging that the city's use of minimum height and "proportionate" weight requirements in hiring its police officers unconstitutionally discriminated against her on the basis of sex and that the city's similar use of the Army General Classification Test (AGCT) unconstitutionally discriminated against her on the basis of race and sex.[3]
 
 
 2
 The district court found that the height and weight requirements discriminated against women, that the AGCT discriminated against blacks, and that, as a matter of state law, a veteran's preference had been applied improperly. The court, however, found insufficient evidence that the AGCT discriminated against women. 363 F.Supp. 1131 (N.D.Ohio 1973).
 
 
 3
 Defendants have appealed from the district court's findings of unconstitutional discrimination as to the height and weight requirements and as to the AGCT.[4] Plaintiff has cross-appealed from the district court's refusals to find that the AGCT unconstitutionally discriminates against women and to award attorney's fees.
 
 HEIGHT REQUIREMENT
 
 4
 East Cleveland Administrative Code § 123.07(d) requires police applicants to "be at least five feet, eight inches in height . . . ." The district court found no "rational support" for and invalidated the requirement. A detailed, in-depth discussion probing the height requirement's relationship, or lack thereof, to physical strength, physical fitness, physical agility, ability to view crowds, ability to drive cars, arm reach, ability to absorb blows, and psychological advantage, however, preceded the court's finding.
 
 
 5
 On appeal, defendants claim that the height requirement, though disqualifying disproportionately more women than men, is a non-gender-based classification and, consequently, constitutionally permissible through the relaxed standard of equal protection review. Even if the height requirement were considered a gender classification, defendants claim it would be constitutionally permissible.
 
 
 6
 Few reported opinions have directly assessed the constitutionality of height requirements. See Callis, Minimum Height and Weight Requirements as a Form of Sex Discrimination, 25 Labor L.J. 736 (1974). Hardy v. Stumpf, 37 Cal.App.3rd 958, 112 Cal.Rptr. 739 (1st Dist. 1974), invalidating a five-foot, seven-inch requirement for Oakland police officers, relied heavily on the instant district court's reasoning and on the "suspect" character of the height classification. Other height requirements for various occupations have been invalidated on the basis of state statutes. See, e. g., New York State Div. of Human Rights v. New York City Dep't of Parks & Recreation, 38 A.D.2d 25, 326 N.Y.S.2d 640 (1971) (municipal lifeguard), New York State Div. of Human Rights v. New York-Pennsylvania Professional Baseball League, 36 A.D.2d 364, 320 N.Y.S.2d 788, aff'd, 29 N.Y.2d 921, 329 N.Y.S.2d 99, 279 N.E.2d 856 (1972) (baseball umpire), and Moore v. City of Des Moines Police Dep't, 2 CCH Empl.Prac.Guide P 5184 (CP No. 881, Iowa Civil Rights Comm'n, filed July 11, 1973) (police). See also In Re Shirley Long, U.S. Civil Serv. Comm'n Bd. of Appeals & Review (Nov. 13, 1972). Of four courts which have refused to invalidate police height requirements, only one sustained the height requirement in light of evidence of the sexually disparate impact of the height requirement. Compare Hail v. White, 8 CCH Empl.Prac.Dec. P 9637 (N.D.Cal.1973) (sustaining height requirement against Title VII claim), with Castro v. Beecher, 459 F.2d 725, 734 (1st Cir. 1972), Arnold v. Ballard, 390 F.Supp. 723, 738 (N.D.Ohio 1975), and Mulligan v. Wilson, 110 N.J.Super. 167, 264 A.2d 745 (1970). Still other courts have found it unnecessary to decide the legality of certain height requirements. See, e. g., Pond v. Braniff Airlines, Inc., 500 F.2d 161, 162 (5th Cir. 1974), rev'g 6 CCH Empl.Prac.Dec. P 8756 (N.D.Tex.1973); Lum v. New York City Civil Serv. Comm'n, 9 CCH Empl.Prac.Dec. P 9947 (S.D.N.Y.1975).
 
 
 7
 The Supreme Court and this court, however, have recently dealt often with gender or gender-related classifications. Geduldig v. Aiello, 417 U.S. 484, 94 S.Ct. 2485, 41 L.Ed.2d 256 (1974), recognized that for constitutional purposes a classification even with an impact exclusively on one gender need not necessarily be treated as if an explicit gender classification.
 
 
 8
 "While it is true that only women can become pregnant, it does not follow that every legislative classification concerning pregnancy is a sex-based classification . . . . Absent a showing that distinctions involving pregnancy are mere pretexts designed to effect an invidious discrimination against the members of one sex or the other, lawmakers are constitutionally free to include or exclude pregnancy from the coverage of legislation such as this on any reasonable basis . . . .
 
 
 9
 "The lack of identity between the excluded disability and gender as such under this insurance program becomes clear upon the most cursory analysis. The program divides potential recipients into two groups pregnant women and nonpregnant persons. While the first group is exclusively female, the second includes members of both sexes." 417 U.S. at 496-97 n. 20, 94 S.Ct. at 2492.
 
 
 10
 See Comment, Geduldig v. Aiello, Pregnancy Classifications and the Definition of Sex Discrimination, 75 Colum.L.Rev. 441, 443-48 (1975) (hereinafter Pregnancy Classifications). Height requirements create even less exclusively gender-related classes. While one of the two Geduldig classes was exclusively of one gender, neither of the East Cleveland classes is exclusively of one gender. The class of persons too short to be eligible consists approximately of 95 per cent of the women and 45 per cent of the men between the eligible ages; the class of persons tall enough to be eligible consists approximately of five per cent of the women and 55 per cent of the men.[5]
 
 
 11
 Like the Supreme Court in Geduldig, lower federal courts have sustained state action disproportionately, or exclusively, affecting one gender. See, e. g., Reynolds v. McNichols, 488 F.2d 1378, 1383 (10th Cir. 1973) (city "hold and treat" ordinance for prostitutes); Bond v. Virginia Polytechnic Institute & State University, 381 F.Supp. 1023 (W.D.Va.1974) (university student health plan's failure to provide for gynecological examinations and pap tests).
 
 
 12
 Even if the height requirement is viewed as gender discrimination, see Satty v. Nashville Gas Co., 384 F.Supp. 765, 771 n. 1 (M.D.Tenn.1973), aff'd --- F.2d --- (6th Cir. 1975), it must be sustained if it "bears a rational relationship to a (legitimate) state objective." Reed v. Reed, 404 U.S. 71, 76, 92 S.Ct. 251, 254, 30 L.Ed.2d 225 (1971).[6] The Supreme Court, and this court, have recently upheld even explicit gender classifications. See, e. g., Schlesinger v. Ballard, 419 U.S. 498, 95 S.Ct. 572, 42 L.Ed.2d 610 (1975); Kahn v. Shevin, 416 U.S. 351, 94 S.Ct. 1734, 40 L.Ed.2d 189 (1974); Robinson v. Board of Regents, 475 F.2d 707 (6th Cir. 1973), cert. denied, 416 U.S. 982, 94 S.Ct. 2382, 40 L.Ed.2d 758 (1974). More importantly perhaps, the classifications the Supreme Court has found unconstitutional have been explicit gender classifications, where the members of the resulting classes have, by definition, only their gender in common. See, e. g., Stanton v. Stanton, --- U.S. ---, 95 S.Ct. 1373, 43 L.Ed.2d 688 (1975); Weinberger v. Wiesenfeld, --- U.S. ---, 95 S.Ct. 1225, 43 L.Ed.2d 514 (1975); Taylor v. Louisiana, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975); Frontiero v. Richardson, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 383 (1973); Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); Reed v. Reed, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971). Like Geduldig, however, the members of the classes in Cleveland Bd. of Educ. v. LaFleur, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974), aff'g 465 F.2d 1184 (6th Cir. 1972), had more (their pregnancies or lack thereof) in common than their genders, but the Supreme Court, instead of equal protection analysis, relied upon the "fundamental" choice to have a child to invalidate mandatory pre- and post-partum leaves. See 94 S.Ct. at 802 (Powell, J., concurring in result); Pregnancy Classifications, supra, at 454-55. The Court, however, found "no rational relationship" between the mandated leaves and "the valid state interest of preserving continuity of (educational) instruction." 94 S.Ct. at 798.
 
 
 13
 We think the district court erred in finding no "rational support" for the height requirement. If East Cleveland's height requirement lacks "rational support," so do height requirements elsewhere. Plaintiff's own exhibits demonstrate that forty-seven of forty-nine state highway patrols and police forces and twenty-nine of twenty-nine municipal police departments surveyed have, or at least then had, height requirements (ranging from five feet, six inches to six feet). See Note, Height Standards in Police Employment & the Question of Sex Discrimination: the Availability of Two Defenses for a Neutral Employment Policy Found Discriminatory Under Title VII, 47 So.Calif.L.Rev. 585, 586-9 (1974) (hereinafter Height Standards). That certain government entities, including the Wisconsin highway patrol, the Pennsylvania state police (2 CCH Empl.Prac.Guide P 5177 (1973)) and the Law Enforcement Assistance Administration (33 Fed.Reg. 6415 (March 9, 1973)), no longer utilize or favor height requirements cannot rebut the nearly universal use of height requirements in hiring police. Such widespread use, of course, does not compel a finding of constitutionality, but "is plainly worth considering" in determining the "rationality" and constitutionality of height requirements. Manning v. Rose, 507 F.2d 889, 892 (6th Cir. 1974), quoting Leland v. Oregon, 343 U.S. 790, 798, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952).
 
 
 14
 Moreover, at least three East Cleveland Police officials testified uncontradictedly and adamantly to the need for the height requirement. The chief of detectives, with twenty-six years' police experience, testified to the psychological advantage of a taller officer; a shift commander, with over seventeen years' experience, testified to the advantage of height in effecting arrests and emergency aid; and, the police chief testified similarly. Though plaintiff's expert witnesses discounted the importance of height and though the district court accepted that discounting, 363 F.Supp. at 1140-4, noteworthily, no expert had police experience.
 
 
 15
 The district court also discounted certain "functions claimed to be related to height and weight (because those functions) actually took only a small portion of the average patrolman's time and . . . (because) traffic-related matters accounted for more than three-quarters of the patrolman's working time." That an occupational function consumes a de minimis proportion of one's workday, however, does not necessarily diminish the need for selecting one who can best perform that function. A lifeguard may well spend all but fifteen minutes of an entire summer observing swimmers and keeping the beach free of litter, but in those fifteen minutes swimming ability to rescue a drowning swimmer becomes vitally crucial. See Height Standards, supra, at 611.
 
 
 16
 Even if plaintiff's experts were correct, and even if modern police practices discount the importance of height, there would still be "rational support" for the height requirement. The equal protection clause requires nothing greater than "rational support." As Mr. Justice Stewart has written,
 
 
 17
 "(The Fourteenth Amendment no longer gives courts) power to strike down state laws 'because they may be unwise, improvident, or out of harmony with a particular school of thought.' That era long ago passed into history." Dandridge v. Williams, 397 U.S. 471, 484-85, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970) (citations omitted).
 
 WEIGHT REQUIREMENT
 
 18
 East Cleveland Administrative Code § 123.07(c) authorizes the Director of Health to establish physical standards for police applicants. In their appellate brief, defendants admit that "(a)s a matter of custom, East Cleveland has followed certain weight 'guidelines' or 'ranges' to judge the fitness of an applicant." See 363 F.Supp. at 1136 n. 3. The 150-pound minimum weight requirement disqualifies approximately 80% of the women, but only 26% of the men, meeting the height requirement.[7]
 
 
 19
 Despite a thorough review of the record, we can find no rational support for the weight requirement.[8] Defendants' brief asserts that the weight requirement was designed "to judge the fitness of an applicant." But plaintiff's expert witness uncontradictedly testified that weight, in itself, is, at best, a poor predictor of fitness; he testified that body composition the relationship between muscle and body fat is much better, and that body composition can be determined quite simply. Moreover, the weight requirement is neither rationally related to physical strength nor to psychological advantage. East Cleveland utilizes other tests[9] to determine strength, and plaintiff's expert denied a correlation between strength and weight. Most of the police officials' testimony concerning psychological advantage was confined to height, and in any event a police officer's clothing would make it difficult for the potential police assaulter to differentiate closely concerning a police officer's weight. The assaulter could hardly tell whether a fully clothed police officer weighs 145, or 155, pounds, even assuming that if he could such knowledge would be relevant in his decision as to whether to assault an officer or not.
 
 AGCT RACE
 
 20
 Defendants claim that the district court erred in invalidating the AGCT for its racially disparate impact because the "total examination process" has no such impact. Defendants claim that the difference between the 33% of black applicants and the 29% of black police hires (seven of twenty-four from 1969-73) is insufficient to require defendants to justify the AGCT as job-related. Even if defendants had the burden of justifying the AGCT, they argue that the use of the test would be permissible as being job-related.
 
 
 21
 Without reaching the question of the AGCT's job-relatedness, or lack thereof, we hold that plaintiff has failed to demonstrate prima facie that the test is unlawfully discriminatory. Though general ability, or intelligence, tests have often been invalidated for their racially disproportionate impacts, see, e. g., Boston Chapter, NAACP, Inc. v. Beecher, 504 F.2d 1017 (1st Cir. 1974), Bridgeport Guardians, Inc. v. Bridgeport Civil Serv. Comm'n, 482 F.2d 1333 (2d Cir. 1973), Walston v. County School Bd., 492 F.2d 919 (4th Cir. 1974), Baker v. Columbus Municipal Separate School Dist., 462 F.2d 1112 (5th Cir. 1972), Carter v. Gallagher, 452 F.2d 315 (8th Cir. 1971), cert. denied, 406 U.S. 950, 92 S.Ct. 2045, 32 L.Ed.2d 338 (1972), Davis v. Washington, 512 F.2d 956 (D.C.Cir.1975), the disproportionate impacts have been in the hiring, rather than in the test results in and of themselves. See, e. g., Davis, supra, at 961 n. 32 (blacks 72% of applicants taking test, but only 55% of new police officers); Vulcan Society v. Civil Serv. Comm'n, 490 F.2d 387, 392 (2d Cir. 1973) (blacks and Hispanics 11.5% of applicants, but less than 5% of those with more than "a marginal chance" of appointment); Arnold v. Ballard, 9 CCH Empl.Prac.Dec. P 9921 (N.D.Ohio, 1975) (blacks more than 13% of applicants, but less than 4% of appointed officers); Kirkland v. New York State Dep't of Correctional Services, 374 F.Supp. 1361 (S.D.N.Y.1974) (blacks and Hispanics 8.1% of those taking test, but only 1.3% of those "likely to be" promoted); Commonwealth v. O'Neill, 348 F.Supp. 1084, 1087-89 (E.D.Pa.1972), modified, 473 F.2d 1029 (3rd Cir. 1973) (blacks approximately 35% of applicants, but only 27.5%, 25.3%, 15.3%, 11.2%, and 7.7% of new police hires from 1966-70).
 
 
 22
 The Second Circuit has observed that,
 
 
 23
 "(w)here the plaintiffs have established that the disparity between the hiring of Whites and minorities is of sufficient magnitude, then there is a heavy burden on the defendant to establish that the examination creating the discrimination bears a demonstrable relationship to successful performance of the jobs for which they were used. . . ." Bridgeport Guardians, supra, 482 F.2d at 1337.
 
 
 24
 Similarly, Kirkland, supra, rejected defendants' attempt to fragment the examination process to show no racially disparate impact.
 
 
 25
 "Any . . . approach (other than scrutinizing the overall examination procedure) conflicts with the dictates of common sense. Achieving at least a passing score on the examination in its entirety determines eligibility for appointment, regardless of performance on individual sub-tests. Accordingly, plaintiffs' case stands or falls on comparative pass rates alone." 374 F.Supp. at 1370.
 
 
 26
 That blacks fare less well than whites on the AGCT, a "subtest" in the process of hiring East Cleveland police officers, is insufficient in itself to require defendants to justify the AGCT as being job-related. Carried to its logical extreme, such a criterion would require the elimination of individual questions marked by poorer performance by a racial group, on the ground that such a question was a "subtest" of the "subtest."
 
 AGCT-SEX
 
 27
 Plaintiff cross-appeals that the district court erred in refusing to find that she had established prima facie that the AGCT unconstitutionally discriminates against women. We hold that the district court properly refused to find prima facie discrimination because of the only two women who have taken the AGCT in applying for the East Cleveland police one fared better than the national norm, one lower; and because testing and psychological data, though perhaps forecasting that women will fare less well on the AGCT than men, is far from being "uncontroverted testimony" that women will fare less well. Boston Chapter, NAACP v. Beecher, 504 F.2d 1017, 1021 (1st Cir.), aff'g 371 F.Supp. 507 (D.Mass.1974); Bridgeport Guardians, Inc. v. Bridgeport Civil Serv. Comm'n, 482 F.2d 1333, 1338-39 (2d Cir. 1973); Castro v. Beecher, 459 F.2d 725, 734 (1st Cir. 1972); Officers for Justice v. Civil Serv. Comm'n, 371 F.Supp. 1328, 1333-34 (N.D.Cal.1973). Rather than being "uncontroverted" that women will fare less well, defendants' expert testified that black women will fare better than black men on "test(s) of aptitude, intellectual aptitude."ATTORNEY'S FEES
 
 
 28
 Especially considering our view of the merits, we find no abuse of discretion in the district court's denial of attorney's fees.
 
 
 29
 Reversed in part; affirmed in part.
 
 
 
 [1]
 Plaintiff named as "city defendants" East Cleveland, its city manager, its police chief, five city commissioners, and three city civil service commissioners. The district court dismissed plaintiff's claims against the city for lack of jurisdiction and against the city manager and the city commissioners because plaintiff "ha(d) failed to show any non-legislative function (they had) performed . . . (which had) denied plaintiffs equal protection of the laws." 363 F.Supp. 1131, 1135 (N.D.Ohio 1973). There has been no appeal of those dismissals
 
 
 [2]
 Plaintiff named as "federal defendants" the administrator and regional director of the Law Enforcement Assistance Administration (LEAA). Allegedly, LEAA awarded funds to the city, the funds were used for a community service officer program, and no women were enrolled in the program. By pretrial order, the district court severed plaintiff's claim against the federal defendants from her claim against the city defendants. After trial, plaintiff moved the district court to dismiss her claim against the federal defendants without prejudice. The city's law director, apparently representing the federal defendants, thereafter moved that plaintiff's claim against the federal defendants be dismissed with prejudice. The record reflects no disposition of the motions to dismiss
 
 
 [3]
 Plaintiff also alleged that the use of the height and weight requirements and of the AGCT violated 42 U.S.C. §§ 1981, 2000d. With the severance of plaintiff's claim against the federal defendants, see footnote 2, supra, plaintiff apparently abandoned her section 2000d claim because of representations that East Cleveland uses no federal funds in hiring police officers. Noteworthily absent in plaintiff's complaint, which was filed on March 23, 1973, were references to Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000e et seq. Section 2000e(a) was amended in 1972 to bring governments, governmental agencies, and political subdivisions within Title VII. Pub.L. No. 88-352, Title VII, 78 Stat. 253. See Zichy v. City of Philadelphia, 392 F.Supp. 338 (E.D.Pa.1975); Kirkland v. New York State Dep't of Correctional Services, 374 F.Supp. 1361, 1364 (S.D.N.Y.1974). Of course, what Title VII compels may differ from what the equal protection clause, in itself, compels. See Communications Workers of America v. American Tel. & Tel., 513 F.2d 1024 (2d Cir. 1975); Wetzel v. Liberty Mut. Ins. Co., 511 F.2d 199, 203 (3rd Cir. 1975), petition for cert. filed 43 U.S.L.W. 3540 (April 2, 1975); Satty v. Nashville Gas Co., 384 F.Supp. 765, 768-771 (M.D.Tenn.1974), aff'd --- F.2d. --- (6th Cir. 1975). But see Afro American Patrolmens League v. Duck, 503 F.2d 294, 301 (6th Cir. 1974); Davis v. Washington, 512 F.2d 956, 957-58 n. 2 (D.C.Cir. 1975)
 
 
 [4]
 By order, a panel of this court on April 4, 1974, rejected plaintiff's motion to dismiss defendants' appeal for lack of subject matter jurisdiction. The order read,
 "(T)o the extent the Memorandum Opinion and Order issued by the District Court on September 6, 1973, is not a final judgment, but is an interlocutory order granting injunctive relief, the same is appealable under 28 U.S.C. § 1292(a)(1)."
 
 
 [5]
 The East Cleveland height requirement, as the district court recognized at trial, was applied to men and women and, consequently, disqualified men as well as women. Such height requirement differs from applying requirements only to women, see Laffey v. Northwest Airlines, Inc., 366 F.Supp. 763, 773-74, 790 (D.D.C.1973), and likewise differs from applying more stringent requirements to women than to men. See Berkelman v. San Francisco Unified School Dist., 501 F.2d 1264, 1268-70 (9th Cir. 1974); Ashworth v. Eastern Airlines, Inc., 389 F.Supp. 597 (E.D.Va.1975); Schaefer v. Tannian, 7 CCH Empl.Prac.Dec. P 9404 (E.D.Mich.1974); Bray v. Lee, 337 F.Supp. 934 (D.Mass.1972)
 
 
 [6]
 Although several lower federal courts have deemed gender-based classifications constitutionally "suspect" and, thereby, justifiable only by a compelling state interest, see, e. g., Johnston v. Hodges, 372 F.Supp. 1015, 1016-18 (E.D.Ky.1974), Stern v. Massachusetts Indemnity Life Ins. Co., 365 F.Supp. 433, 439-42 (E.D.Pa.1973), see also Monell v. Department of Social Services, 357 F.Supp. 1051 (S.D.N.Y.1972), other courts have refused to deem such classifications "suspect," thereby applying a greater or lesser demanding "rational relationship" test. See, e. g., United States v. Baechler, 509 F.2d 13 (4th Cir. 1974), Green v. Waterford Bd. of Educ., 473 F.2d 629, 632-4 (2d Cir. 1973), Edwards v. Schlesinger, 377 F.Supp. 1091, 1094-96 (D.D.C.1974), Ritacco v. Norwin School Dist., 361 F.Supp. 930 (W.D.Pa.1973). Still other courts have deemed such classifications subject to an arguably intermediate "close scrutiny" test. See, e. g., Gilpin v. Kansas State High School Athletic Ass'n, 377 F.Supp. 1233, 1238-40 (D.Kan.1973). Most importantly, however, never has this court or a Supreme Court majority required a compelling state interest to justify such classifications
 
 
 [7]
 The height requirement disqualifies approximately 95 per cent of the women. The weight requirement disqualifies an additional four per cent. Thus, it disqualifies 80 per cent of the women meeting the height requirement. The height requirement disqualifies approximately 45 per cent of the men. The weight requirement disqualifies an additional 14 per cent, or just over 26 per cent of the men meeting the height requirement
 
 
 [8]
 Neither can we find indirect "rational support" for the weight, unlike the height, requirement in widespread use of such weight requirements. The record is silent concerning whether such weight requirements are near-universal, widespread, or even unique to East Cleveland
 
 
 [9]
 The athletic, or physical fitness, test consists of kneebends, push-ups, sit-ups, and side-hops