## Thomas S. Brletic, Appellant *v.* Municipality of Monroeville, Appellee.

432

Argued May 5, 1981, before President Judge CRUM-LISH and Judges MENCER, BLATT, CRAIG and MACPHAIL.

*Christopher LePore,* with him *John W. DeWalt, Cooper, LePore & Dreeland,* for appellant.

*John D. Finnegan,* for appellee.

OPINION BY JUDGE CRAIG, February 4, 1982:

Police applicant Thomas S. Brletic here appeals a decision of the Allegheny County Common Pleas Court

which held that the Borough of Monroeville's maximum weight restriction for police candidates is valid. We affirm.[1]

The borough did not permit the applicant to sit for the written component of the civil service examination because his weight at that time exceeded the topmost ("large frame") maximum of 200 pounds made applicable to his height of six feet, one and one-half inches, by the same height/weight tables as those used by the Pennsylvania State Police.

The applicant first contends that the use of this maximum weight standard is unlawful because it (a) constitutes an irrebuttable presumption violative of substantive due process, or (b) is contrary to a Monroeville Home Rule Charter provision, adopting the Borough Code requirement that civil service examinations shall be "practical" and shall "fairly test ... merit and fitness . . . to discharge the duties of the employment sought."[2] A related contention is that the local agency's decision relied upon findings not supported by substantial evidence.

The applicant's second major contention is that he was also deprived of due process, apparently in a procedural sense, because he did not have sufficient advance notice of the weight standard.

The substantive issues present the inquiry: Does the maximum weight standard constitute an invalid irrebuttable presumption or is it otherwise not reasonably related to the purpose of police candidate selection?

We conclude that the irrebuttable presumption analysis is not appropriate to determining the legal

---

[1] This case was reassigned to the opinion writer December 12, 1981.

[2] Act of February 1, 1966, P.L. (1965) 1656, *as amended*, §1181. 53 P.S. §46181.

entitlement of an applicant for a public position because a review of the irrebuttable presumption line of decisions makes clear that due process is thus offended only where there is a deprivation of a property right, a personal liberty, or some other vested interest. *Cleveland Board of Education v. LaFleur,* 414 U.S. 632 (1974) involved the application of a mandatory leave of absence for pregnancy to teachers who had tenure and thereby a property right in their employment. *Vlandis v. Kline,* 412 U.S. 441 (1973) condemned the application of a continuing presumption of nonresidency, resulting in higher tuition fees, to one who had acquired an existing interest as a state university student. *Stanley v. Illinois,* 405 U.S. 645 (1972) condemned the impairment of the parental rights of an unwed father by a presumption of unfitness.

Hence, the cited cases do not govern here because an applicant for public employment possesses no property right or other vested interest in the prospective employment. *See, a fortiori, Hoffman v. Montour County,* 50 Pa. Commonwealth Ct. 101, 411 A.2d 1319 (1980), holding that even the occupant of a public position has no due process right in the absence of statutory or contractual tenure.

Turning to the general question of the reasonableness of adopting maximum weight limits based on standard tables as a threshold requirement for employment as a police officer, we note that the borough uses the weight maximum as just one factor relating to health, appearance and physical condition. Applicants who surmount that threshold are also given actual strength and agility tests, but the weight ceiling is not enforced after hiring, as exemplified by the fact that the present police chief's weight exceeds the maximum for him.

From the record, we perceive that the policy wisdom of this maximum weight restriction for police candidates is certainly debatable. The borough police chief, by his testimony, confirmed that the weight of police officers does not figure in his ongoing administrative decisions. Although the applicant's expert witness granted that obesity was to be avoided in police applicants, his view was that such a physical condition is to be properly determined by skinfold measurement or a complex of other physical measurements, rather than by a ratio of weight to height.

However, we agree with Judge STAISEY of the common pleas court who found "indirect 'rational support' in the record by view of the accepted utilization of such standards by the Pennsylvania State Police." Judge STAISEY quoted *Weber v. City of Philadelphia*, 437 Pa. 179, 262 A.2d 297 (1970) for the principle that " 'judicial restraint rather than judicial intervention should guide the courts' in passing upon the propriety of the actions of municipal officials." As the common pleas court also noted, *Smith v. Troyan*, 520 F.2d 492 (6th Cir. 1975) can be distinguished because the police applicant requirement there invalidated was a *minimum* weight standard which, of course, operated as a discriminatory factor with respect to gender. In the same case, a minimum height requirement was approved, partly because it appeared to be a requirement in accepted use by police agencies.

By using the weight tables, the borough here is drawing the line at a point not arbitrarily selected, but one derived from police agency experience; the record indicates, for example, that the borough had been impressed by the point that the weight standard had appeared to be not inconsistent with the prowess of the Pennsylvania State Police in hiring women ap-

plicants. A court should not be hasty to say that every municipality, no matter how small, must use a more sophisticated means for measuring physical body composition of applicants. Even those methods have their limitations; the applicant's expert witness noted that the skinfold method for measuring body fat could not be used for this particular applicant because of his musculature gained through his weight-lifting exercise regimen.

Judges, regardless of their convictions as to better ways for the accomplishment of certain results, should not step in to usurp the discretion of local officials in adopting initial qualifications. We conclude that Judge STAISEY acted correctly in not doing so.

The fact that this borough bars over-maximum-weight applicants from sitting for their written examination, while the Pennsylvania State Police admits applicants if they meet the weight standard at the time of actual admission, having qualified otherwise, represents an administrative choice by the borough, rather than a flaw which should be considered by the courts to be fatal. The borough's position appears to be that its approach of requiring weight qualification before the examination functions to minimize the number of examinations administered; in addition, the record notes that the time period between the examination of applicants and actual hiring, in Monroeville's experience, varies widely.

This point as to the time allowed for weight qualification is closely related to the applicant's notice contention, claiming a denial of due process in the procedural sense because, according to applicant's testimony, he had only somewhere between eight or nine days and "two weeks" within which to reduce his weight from 225 to 200 pounds, during which he came within four pounds of the goal.

However, the applicant has been unable to present any authority on this point, which is understandable in view of the above-noted absence of any possession of a property right at the point of applicant status. Although the evidence is disputed as to whether or not applicant was given specific written notice of the weight standards when he obtained an application about three weeks in advance of the examination day, we can perceive no essential unfairness because the borough's newspaper advertisement of the position had noted that "weight must be in proportion to height", thus at least putting applicant on notice to inquire about specifics on that point. Applicant's testimony, that he strove to meet the weight standard over a two-week period, indicates rather clearly that he was not dependent upon the borough's letter, about eight days in advance, to know of his need to do so.

There is no need to consider the presence or absence of evidence to support positive findings as to the reasonableness of the borough's approach because the burden of presenting clear and convincing evidence to the contrary is, of course, upon the applicant. Although the well-prepared case of the applicant has pointed out that there can be more than one approach to pre-employment qualifications of this sort, the record does not establish that the requirement here is arbitrary or irrational so as to be legally invalid.

### Order

Now, February 4, 1982, the order of the Court of Common Pleas of Allegheny County dated March 31, 1980 is affirmed.

Judge PALLADINO did not participate in the decision in this case.

DISSENTING OPINION BY PRESIDENT JUDGE CRUMLISH, JR.:

I dissent. This weight requirement bears no rational relationship to the asserted goal of the Municipality.

> When reviewing a classification under the rationality test . . . a court must conduct a two-step analysis. First, it should identify the purposes of the statute and assure itself that these purposes are legitimate; ordinarily, this inquiry will involve examination of statements of purpose and other evidence in the legislative history. Second, having identified the governmental purposes, the court must determine whether the classification is rationally related to the achievement of these goals.

*Delaware River Basin Commission v. Bucks County Water and Sewer Authority,* 641 F.2d 1087 (3rd Cir. 1981).

Admittedly, the Municipality's goal of securing an efficient and capable police force is a legitimate goal. However, the record abrogates any connection between this goal and the use of these standards. As noted by the majority, the Municipality never enforces this weight requirement once a candidate becomes a member of the police force, nor does weight figure into any consideration of job assignments once on the force. The police chief himself is well over the maximum weight limit for his height. Additionally, the Municipal Manager, the person entirely responsible for adopting these requirements, testified that he was concerned as to "whether it does represent a fair method of evaluation."

> In an equal protection case . . . those challenging the legislative judgment must convince the court that the legislative facts on which the

classification is apparently based could not reasonably be conceived to be true by the governmental decision maker.

*Vance v. Bradley,* 440 U.S. 93, 111 (1979).

I am convinced that the record refutes any rational relationship of the Municipality's goal to these weight requirements.

I would reverse for the foregoing reasons.