# KAHN *v.* SHEVIN, ATTORNEY GENERAL OF FLORIDA, ET AL.

No. 73–78.   Argued February 25–26, 1974—Decided April 24, 1974

DOUGLAS, J., delivered the opinion of the Court, in which BURGER, C. J., and STEWART, BLACKMUN, POWELL, and REHNQUIST, JJ., joined.   BRENNAN, J., filed a dissenting opinion, in which MARSHALL, J., joined, *post*, p. 357.   WHITE, J., filed a dissenting opinion, *post*, p. 360.

*Ruth Bader Ginsburg* argued the cause for appellant. With her on the briefs was *Melvin L. Wulf.*

*Sydney H. McKenzie III*, Assistant Attorney General of Florida, argued the cause for appellees.   With him on the brief was *Robert L. Shevin*, Attorney General *pro se.*

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

Since at least 1885, Florida has provided for some form of property tax exemption for widows.[1] The current law granting all widows an annual $500 exemption, Fla. Stat. § 196.202 (Supp. 1974–1975), has been essentially unchanged since 1941.[2] Appellant Kahn is a widower who lives in Florida and applied for the exemption to the Dade County Tax Assessor's Office. It was denied because the statute offers no analogous benefit for widowers. Kahn then sought a declaratory judgment in the Circuit Court for Dade County, Florida, and that court held the statute violative of the Equal Protection Clause of the Fourteenth Amendment because the classification "widow" was based upon gender. The Florida Supreme Court reversed, finding the classification valid because it has a " 'fair and substantial relation to the object of the legislation,' "[3] that object being the reduction of "the disparity between the economic capabilities of a man and a woman." Kahn appealed here, 28 U. S. C. § 1257 (2), and we noted probable jurisdiction, 414 U. S. 973. We affirm.

---

[1] Article IX, § 9, of the 1885 Florida Constitution provided that: "There shall be exempt from taxation property to the value of two hundred dollars to every widow that has a family dependent on her for support, and to every person that has lost a limb or been disabled in war or by misfortune."

[2] In 1941. Fla. Stat. § 192.06 (7) exempted "[p]roperty to the value of five hundred dollars to every widow . . . ." That provision has survived a variety of minor changes and renumbering in substantially the same form, including Fla. Stat. § 196.191 (7) (1971) under which appellant was denied the exemption. Currently Fla. Stat. § 196.202 provides: "Property to the value of five hundred dollars ($500) of every widow, blind person, or totally and permanently disabled person who is a bona fide resident of this state shall be exempt from taxation."

[3] Quoting Reed v. Reed, 404 U. S. 71, 76.

There can be no dispute that the financial difficulties confronting the lone woman in Florida or in any other State exceed those facing the man. Whether from overt discrimination or from the socialization process of a male-dominated culture, the job market is inhospitable to the woman seeking any but the lowest paid jobs.[4] There are, of course, efforts under way to remedy this situation. On the federal level, Title VII of the Civil Rights Act of 1964 prohibits covered employers and labor unions from discrimination on the basis of sex, 78 Stat. 253, 42 U. S. C. §§ 2000e–2 (a), (c), as does the Equal Pay Act of 1963, 77 Stat. 56, 29 U. S. C. § 206 (d). But firmly entrenched practices are resistant to such pressures, and, indeed, data compiled by the Women's Bureau of the United States Department of Labor show that in 1972 a woman working full time had a median income which was only 57.9% of the median for males—a figure actually six points lower than had been achieved in 1955.[5] Other data point in the same direc-

---

[4] In 1970 while 40% of males in the work force earned over $10,000, and 70% over $7,000, 45% of women working full time earned less than $5,000, and 73.9% earned less than $7,000. U. S. Bureau of the Census: Current Population Reports, Series P–60, No. 80.

[5] The Women's Bureau provides the following data:

| Year | Median earnings | | Women's median earnings as percent of men's |
| | Women | Men | |
| --- | --- | --- | --- |
| 1972 | $5,903 | $10,202 | 57.9 |
| 1971 | 5,593 | 9,399 | 59.5 |
| 1970 | 5,323 | 8,966 | 59.4 |
| 1969 | 4,977 | 8,227 | 60.5 |
| 1968 | 4,457 | 7,664 | 58.2 |
| 1967 | 4,150 | 7,182 | 57.8 |
| 1966 | 3,973 | 6,848 | 58.0 |
| 1965 | 3,823 | 6,375 | 60.0 |

[*Footnote 5 is continued on p. 354*]

tion.[6] The disparity is likely to be exacerbated for the widow. While the widower can usually continue in the occupation which preceded his spouse's death, in many cases the widow will find herself suddenly forced into a job market with which she is unfamiliar, and in which, because of her former economic dependency, she will have fewer skills to offer.[7]

| Year | Median earnings | | Women's median earnings as percent of men's |
|------|-------|------|------|
| | Women | Men | |
| 1964 | $3,690 | $6,195 | 59.6 |
| 1963 | 3,561 | 5,978 | 59.6 |
| 1962 | 3,446 | 5,794 | 59.5 |
| 1961 | 3,351 | 5,644 | 59.4 |
| 1960 | 3,293 | 5,417 | 60.8 |
| 1959 | 3,193 | 5,209 | 61.3 |
| 1958 | 3,102 | 4,927 | 63.0 |
| 1957 | 3,008 | 4,713 | 63.8 |
| 1956 | 2,827 | 4,466 | 63.3 |
| 1955 | 2,719 | 4,252 | 63.9 |

Note.—Data for 1962–72 are not strictly comparable with those for prior years, which are for wage and salary income only and do not include earnings of self-employed persons.

Source: Table prepared by Women's Bureau, Employment Standards Administration, U. S. Department of Labor, from data published by Bureau of the Census, U. S. Department of Commerce.

[6] For example, in 1972 the median income of women with four years of college was $8,736—exactly $100 more than the median income of men who had never even completed one year of high school. Of those employed as managers or administrators, the women's median income was only 53.2% of the men's, and in the professional and technical occupations the figure was 67.5%. Thus the disparity extends even to women occupying jobs usually thought of as well paid. Tables prepared by the Women's Bureau, Employment Standards Administration, U. S. Department of Labor.

[7] It is still the case that in the majority of families where both spouses are present, the woman is not employed. A. Ferriss, Indicators of Trends in the Status of American Women 95 (1971).

There can be no doubt, therefore, that Florida's differing treatment of widows and widowers " 'rest[s] upon some ground of difference having a fair and substantial relation to the object of the legislation.' " *Reed* v. *Reed,* 404 U. S. 71, 76, quoting *Royster Guano Co.* v. *Virginia,* 253 U. S. 412, 415.

This is not a case like *Frontiero* v. *Richardson,* 411 U. S. 677, where the Government denied its female employees both substantive and procedural benefits granted males *"solely . . . for* administrative convenience." *Id.,* at 690 (emphasis in original).[8] We deal here with a state tax law reasonably designed to further the state policy of cushioning the financial impact of spousal loss upon the sex for which that loss imposes a disproportionately heavy burden. We have long held that "[w]here taxation is concerned and no specific federal right, apart from equal protection, is imperiled, the States have large leeway in making classifications and drawing lines which in their judgment produce reasonable systems of taxation." *Lehnhausen* v. *Lake Shore Auto Parts Co.,* 410 U. S. 356, 359. A state tax law is not arbitrary although it "discriminate[s] in favor of a certain class . . . if the discrimination is founded upon a reasonable distinction, or difference in state policy," not in conflict with the Federal Constitution. *Allied Stores* v. *Bowers,* 358 U. S. 522, 528. This principle has weathered nearly a century of Supreme Court adjudica-

---

[8] And in *Frontiero* the plurality opinion also noted that the statutes there were "not in any sense designed to rectify the effects of past discrimination against women. On the contrary, these statutes seize upon a group—women—who have historically suffered discrimination in employment, and rely on the effects of this past discrimination as a justification for heaping on additional economic disadvantages." 411 U. S., at 689 n. 22 (citations omitted).

tion,[9] and it applies here as well. The statute before us is well within those limits.[10]

*Affirmed.*

---

[9] See *Bell's Gap R. Co.* v. *Pennsylvania,* 134 U. S. 232, 237; *Madden* v. *Kentucky,* 309 U. S. 83, 87–88; *Lawrence* v. *State Tax Comm'n,* 286 U. S. 276; *Royster Guano Co.* v. *Virginia,* 253 U. S. 412.

[10] The dissents argue that the Florida Legislature could have drafted the statute differently, so that its purpose would have been accomplished more precisely. But the issue, of course, is not whether the statute could have been drafted more wisely, but whether the lines chosen by the Florida Legislature are within constitutional limitations. The dissents would use the Equal Protection Clause as a vehicle for reinstating notions of substantive due process that have been repudiated. "We have returned to the original constitutional proposition that courts do not substitute their social and economic beliefs for the judgment of legislative bodies, [which] are elected to pass laws." *Ferguson* v. *Skrupa,* 372 U. S. 726, 730.

Gender has never been rejected as an impermissible classification in all instances. Congress has not so far drafted women into the Armed Services, 50 U. S. C. App. § 454. The famous Brandeis Brief in *Muller* v. *Oregon,* 208 U. S. 412, on which the Court specifically relied, *id.,* at 419–420, emphasized that the special physical structure of women has a bearing on the "conditions under which she should be permitted to toil." *Id.,* at 420. These instances are pertinent to the problem in the tax field which is presented by this present case. Mr. Chief Justice Hughes in speaking for the Court said:

"The States, in the exercise of their taxing power, as with respect to the exertion of other powers, are subject to the requirements of the due process and the equal protection clauses of the Fourteenth Amendment, but that Amendment imposes no iron rule of equality, prohibiting the flexibility and variety that are appropriate to schemes of taxation. . . . In levying such taxes, the State is not required to resort to close distinctions or to maintain a precise, scientific uniformity with reference to composition, use or value. To hold otherwise would be to subject the essential taxing power of the State to an intolerable supervision, hostile to the basic principles of our Government and wholly beyond the protection which the general clause of the Fourteenth Amendment was intended to assure." *Ohio Oil Co.* v. *Conway,* 281 U. S. 146, 159.

MR. JUSTICE BRENNAN, with whom MR. JUSTICE MARSHALL joins, dissenting.

The Court rejects widower Kahn's claim of denial of equal protection on the ground that the limitation in Fla. Stat. § 196.191 (7) (1971), which provides an annual $500 property tax exemption to widows, is a legislative classification that bears a fair and substantial relation to "the state policy of cushioning the financial impact of spousal loss upon the sex for which that loss imposes a disproportionately heavy burden." *Ante,* at 355. In my view, however, a legislative classification that distinguishes potential beneficiaries solely by reference to their gender-based status as widows or widowers, like classifications based upon race,[1] alienage,[2] and national origin,[3] must be subjected to close judicial scrutiny, because it focuses upon generally immutable characteristics over which individuals have little or no control, and also because gender-based classifications too often have been inexcusably utilized to stereotype and stigmatize politically powerless segments of society. *See Frontiero* v. *Richardson,* 411 U. S. 677 (1973). The Court is not, therefore, free to sustain the statute on the ground that it rationally promotes legitimate governmental interests; rather, such suspect classifications can be sustained only when the State bears the burden of demonstrating that the challenged legislation serves overriding or compelling interests that cannot be achieved either by a more carefully tailored legislative classification or by the use of feasible,

---

[1] See *Loving* v. *Virginia,* 388 U. S. 1, 11 (1967); *McLaughlin* v. *Florida,* 379 U. S. 184, 191–192 (1964); *Bolling* v. *Sharpe,* 347 U. S. 497, 499 (1954).

[2] See *Graham* v. *Richardson,* 403 U. S. 365, 372 (1971).

[3] See *Oyama* v. *California,* 332 U. S. 633, 644–646 (1948); *Korematsu* v. *United States,* 323 U. S. 214, 216 (1944); *Hirabayashi* v. *United States,* 320 U. S. 81, 100 (1943).

less drastic means.   While, in my view, the statute serves a compelling governmental interest by "cushioning the financial impact of spousal loss upon the sex for which that loss imposes a disproportionately heavy burden," I think that the statute is invalid because the State's interest can be served equally well by a more narrowly drafted statute.

Gender-based classifications cannot be sustained merely because they promote legitimate governmental interests, such as efficacious administration of government.  *Frontiero* v. *Richardson, supra; Reed* v. *Reed,* 404 U. S. 71 (1971).  For "when we enter the realm of 'strict judicial scrutiny,' there can be no doubt that 'administrative convenience' is not a shibboleth, the mere recitation of which dictates constitutionality.   See *Shapiro* v. *Thompson,* 394 U. S. 618 (1969); *Carrington* v. *Rash,* 380 U. S. 89 (1965).   On the contrary, any statutory scheme which draws a sharp line between the sexes, *solely* for the purpose of achieving administrative convenience, necessarily commands 'dissimilar treatment for men and women who are . . . similarly situated,' and therefore involves the 'very kind of arbitrary legislative choice forbidden by the [Constitution] . . . .'  *Reed* v. *Reed,* 404 U. S., at 77, 76."   *Frontiero* v. *Richardson, supra,* at 690.   But Florida's justification of § 196.191 (7) is not that it serves administrative convenience or helps to preserve the public fisc.   Rather, the asserted justification is that § 196.191 (7) is an affirmative step toward alleviating the effects of past economic discrimination against women.[4]

I agree that, in providing special benefits for a needy segment of society long the victim of purposeful dis-

---

[4] Brief for Appellees 24–25; Tr. of Oral Arg. 29–31.  The State's argument is supported by the Florida Supreme Court which held that the object of § 196.191 (7) was to help " 'reduce the disparity between the economic . . . capabilities of a man and a woman . . . .' " 273 So. 2d 72, 73 (1973).

crimination and neglect, the statute serves the compelling. state interest of achieving equality for such groups.[5] No one familiar with this country's history of pervasive sex discrimination against women [6] can doubt the need for remedial measures to correct the resulting economic imbalances. Indeed, the extent of the economic disparity between men and women is dramatized by the data cited by the Court, *ante,* at 353–354. By providing a property tax exemption for widows, § 196.191 (7) assists in reducing that economic disparity for a class of women particularly disadvantaged by the legacy of economic discrimination.[7] In that circumstance, the purpose and effect of the suspect classification are ameliorative; the statute neither stigmatizes nor denigrates widowers not also benefited by the legislation. Moreover, inclusion of needy widowers within the class of beneficiaries would

---

[5] Significantly, the Florida statute does not compel the beneficiaries to accept the State's aid. The taxpayer must file for the tax exemption. This case, therefore, does not require resolution of the more difficult questions raised by remedial legislation which makes special treatment mandatory. See Note, Developments in the Law—Equal Protection, 82 Harv. L. Rev. 1065, 1113–1117 (1969).

[6] See *Frontiero* v. *Richardson,* 411 U. S. 677 (1973); *Sail'er Inn, Inc.* v. *Kirby,* 5 Cal. 3d 1, 485 P. 2d 529 (1971). See generally The President's Task Force on Women's Rights and Responsibilities, A Matter of Simple Justice (1970); L. Kanowitz, Women and the Law: The Unfinished Revolution (1969).

[7] As noted by the Court, *ante,* at 353–354:

"[D]ata compiled by the Women's Bureau of the United States Department of Labor show that in 1972 a woman working full time had a median income which was only 57.9% of the median for males—a figure actually six points lower than had been achieved in 1955 . . . . The disparity is likely to be exacerbated for the widow. While the widower can usually continue in the occupation which preceded his spouse's death, in many cases the widow will find herself suddenly forced into a job market with which she is unfamiliar, and in which, because of her former economic dependency, she will have fewer skills to offer." (Footnotes omitted.)

not further the State's overriding interest in remedying the economic effects of past sex discrimination for needy victims of that discrimination. While doubtless some widowers are in financial need, no one suggests that such need results from sex discrimination as in the case of widows.

The statute nevertheless fails to satisfy the requirements of equal protection, since the State has not borne its burden of proving that its compelling interest could not be achieved by a more precisely tailored statute or by use of feasible, less drastic means. Section 196.191 (7) is plainly overinclusive, for the $500 property tax exemption may be obtained by a financially independent heiress as well as by an unemployed widow with dependent children. The State has offered nothing to explain why inclusion of widows of substantial economic means was necessary to advance the State's interest in ameliorating the effects of past economic discrimination against women.

Moreover, alternative means of classification, narrowing the class of widow beneficiaries, appear readily available. The exemption is granted only to widows who complete and file with the tax assessor a form application establishing their status as widows. By merely redrafting that form to exclude widows who earn annual incomes, or possess assets, in excess of specified amounts, the State could readily narrow the class of beneficiaries to those widows for whom the effects of past economic discrimination against women have been a practical reality.

MR. JUSTICE WHITE, dissenting.

The Florida tax exemption at issue here is available to all widows but not to widowers. The presumption is that all widows are financially more needy and less trained

or less ready for the job market than men.  It may be
that most widows have been occupied as housewife,
mother, and homemaker and are not immediately pre-
pared for employment.  But there are many rich widows
who need no largess from the State; many others are
highly trained and have held lucrative positions long
before the death of their husbands.  At the same time,
there are many widowers who are needy and who are in
more desperate financial straits and have less access to
the job market than many widows.  Yet none of them
qualifies for the exemption.

I find the discrimination invidious and violative of the
Equal Protection Clause.  There is merit in giving poor
widows a tax break, but gender-based classifications are
suspect and require more justification than the State
has offered.

I perceive no purpose served by the exemption other
than to alleviate current economic necessity, but the State
extends the exemption to widows who do not need the
help and denies it to widowers who do.  It may be ad-
ministratively inconvenient to make individual deter-
minations of entitlement and to extend the exemption
to needy men as well as needy women, but administrative
efficiency is not an adequate justification for discrimina-
tions based purely on sex.  *Frontiero v. Richardson,*
411 U. S. 677 (1973); *Reed v. Reed,* 404 U. S. 71 (1971).

It may be suggested that the State is entitled to prefer
widows over widowers because their assumed need is
rooted in past and present economic discrimination
against women.  But this is not a credible explanation
of Florida's tax exemption; for if the State's purpose was
to compensate for past discrimination against females,
surely it would not have limited the exemption to women
who are widows.  Moreover, even if past discrimination
is considered to be the criterion for current tax exemption,

the State nevertheless ignores all those widowers who have felt the effects of economic discrimination, whether as a member of a racial group or as one of the many who cannot escape the cycle of poverty. It seems to me that the State in this case is merely conferring an economic benefit in the form of a tax exemption and has not adequately explained why women should be treated differently from men.

I dissent.