505 F.2d 264
 Carolyn Ann KING, by Gerald E. King, her next friend, et
al., Plaintiffs-Appellants,
v.
LITTLE LEAGUE BASEBALL, INC., a Federal Corporation, and S.
B. Stanton, Agent for Little League Baseball,
Inc., Defendants-Appellees.
 No. 73-1940.
 United States Court of Appeals, Sixth Circuit.
 Oct. 30, 1974.
 
 John M. Barr, Freatman, Barr & Anhut, Ypsilanti, Mich., Ronald Wm. Egnor, Bronson & Egnor, Ypsilanti, Mich., for plaintiffs-appellants.
 John H. Norris, Frederick J. Amrose, Monaghan, Campbell, LoPrete & McDonald, Detroit, Mich., for defendants-appellees.
 Before McCREE, MILLER and ENGEL, Circuit Judges.
 ENGEL, Circuit Judge.
 
 
 1
 This is a sex discrimination case arising out of the refusal of the defendant Little League Baseball, Inc., to permit the local league which is chartered in Ypsilanti, Michigan, to operate while allowing a girl to participate on one of its little league teams. Plaintiffs sought injunctive relief under 42 U.S.C. 1983, to protect rights allegedly secured by the Fifth and Fourteenth Amendments, and declaratory judgment relief under 28 U.S.C. 2201 and 2202. District Judge Ralph M. Freeman dismissed the action upon motion, Federal Rule of Civil Procedure 12(b)(6), holding that there was 'not sufficient state involvement in defendant Little League's enforcement of its 'no girls' rule to bring it under color of state law. Hence this court does not have jurisdiction over the subject matter in this case'. We affirm on somewhat more narrow grounds than those contained in the trial judge's memorandum opinion.[1] The essential facts, as recited by the trial judge, follow.
 
 
 2
 Plaintiff-Appellant Carolyn King is a twelve year old girl whose residence is in Ypsilanti, Michigan. Plaintiff-appellant Ypsilanti Community American Little League (American) is an unincorporated voluntary association, existing under Michigan law. American was chartered by the defendant corporation as a member of the Little League on March 30, 1973. Chartering of local leagues by defendant is done on an annual basis.
 
 
 3
 Defendant-Appellee Little League Baseball, Inc. (Little League) is a Federal Corporation, chartered under Public Law 88-378, July 16, 1964. Its principal offices are in Williamsport, Pennsylvania. It conducts the Little League program through the chartering of local leagues such as plaintiff American. Regulation IV(i) of defendant's official Regulations concerns the eligibility of players and provides: 'Girls are not eligible'.
 
 
 4
 There is no little league baseball team for girls in the Ypsilanti area. On or about April 1, 1973, plaintiff King appeared at the tryouts for American. She received permission to try out for a team in the American League and to play for a team if qualified on the basis of ability. At a meeting of the Board of American on that same date, plaintiff-appellant King was granted permission to join the 'Orioles' team strictly on the basis of her ability after tryouts. She practiced with the team and was designated by her coach to start in the opening game.
 
 
 5
 On or about May 7, 1973, defendant-appellee Little League through defendant-appellee Stanton, Director of District IV, informed American's officers that if plaintiff-appellant King were allowed to remain on a team roster, appeared in uniform with the team, or continued practicing with the Orioles team, the Charter granted by defendant would be revoked immediately. Such revocation would cause plaintiff American:
 
 
 6
 (1) to have its insurance with defendant cancelled;
 
 
 7
 (2) not be able to have its champion team play other chartered Little League teams, especially the champion of rival Ypsilanti National Little League;
 
 
 8
 (3) not to be able to have its All Stars play in the Little League District tournament, whose winner can compete for a chance to play in the Little League World Series;
 
 
 9
 (4) to have its uniforms, equipment, bank account, etc., taken away by defendant; and
 
 
 10
 (5) not to be able to use the Little League designation on its uniforms, stationery, fund drives, or other things.
 
 
 11
 The Board of Directors of plaintiff American held a special meeting on May 7, 1973. In light of the above-mentioned communication from defendant Little League, the Board decided to drop plaintiff King from the Orioles team in order not to jeopardize the baseball recreation program for about 220 boys.
 
 
 12
 At a special meeting on May 8, 1973, the Ypsilanti City Council directed the City Manager to withhold use of city parks and baseball diamonds from plaintiff American or any 'organization that practices any form of discrimination'. On the same day the Board of Directors of American met and decided to retain plaintiff-appellant King on the Oriole team. The Charter of plaintiff American was then revoked by defendant for violation of the rule forbidding girls to play. Plaintiffs subsequently brought this suit, alleging that defendant's regulation and the enforcement thereof violate the Equal Protection Clause of the Fourteenth Amendment.
 
 
 13
 The trial judge observed candidly, 'That there is some state involvement in little league activities on the local level is undeniable'. He then proceeded to compare the extent of alleged state involvement in the case at bar with that in Burton v. Wilmington Parking Authority, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961), Smith v. YMCA of Montgomery, 316 F.Supp. 899 (M.D.Ala. 1970), aff'd. 462 F.2d 634 (5th Cir. 1972), Statom v. Board of Commissioners, 233 Md. 57, 195 A.2d 41 (1963), and Grafton v. Brooklyn Law School, 478 F.2d 1137 (2nd Cir. 1973). While Judge Freeman based his conclusion ultimately upon the absence of 'significant state involvement in the management or decision-making of the private organization or institution', he found similarity as well with the facts in Statom, supra, wherein two Negro boys were afforded relief after being denied membership in a boys' club on account of their race, and commented:
 
 
 14
 'If the present case concerned racial discrimination, defendant Little League, like the boys' club in Statom might well be deemed to have acted under color of law. But the state action is found more readily when racial discrimination is in issue than when other rights are asserted.'We do not adopt the quoted language from Judge Freeman's opinion, but rely instead upon a more immediate basis for affirmance. The posture of the case at the time suit was commenced, as pleaded in the complaint, demonstrates that plaintiffs did not state a cause of action against the named defendants, for which relief can be granted under 42 U.S.C. 1983.
 
 
 15
 While there had been a long history of local little league baseball under the auspices of the national organization, it appears undisputed both from the wellpleaded facts in the complaint as well as from the evidence before the court that whatever the situation had been in the past, it had radically changed before suit was commenced. By that time, (a) the City of Ypsilanti had cut off use of its facilities to anyone, including defendant, who discriminated in their use; (b) the defendant national corporation had cancelled its charter with the local group; (c) the local little league plaintiff had admitted plaintiff King to membership on its team; and (d) baseball without discrimination as to sex was being played by the local league on the public playing fields of Ypsilanti with plaintiff King participating.
 
 
 16
 It must be remembered that the only defendants are the National Little League organization and its Regional Director. If any state action is to be found in the case, it has to be in the actions of those defendants and their conduct must meet the requirements of governmental involvement, Burton v. Wilmington Parking Authority, supra. Contrary to the usual action under 42 U.S.C. 1983, the municipal and state authority, therefore, is aligned here with the plaintiffs and not against them.
 
 
 17
 It is to be noted further that this case was not pleaded as a class action, but was solely directed to the local problem arising out of Carolyn Ann's participation. While it is true that the defendant national organization was incorporated by act of Congress, it was not by reason thereof a public agency, any more than its corporate actions would have been deemed state action, had it been incorporated under state law. No claim of pendent jurisdiction because of any breach of contract was asserted. The relationship between the parties was noncontractual, and each had the right to discontinue it at will. If the use of municipal facilities for boys-only little league baseball was violative of Fourteenth Amendment rights, the remedy for it had already been effectively applied before suit was commenced by removal of all state involvement in the conduct complained of. Plaintiffs thus found themselves before suit where the plaintiffs in Statom v. Board of Commissioners, supra, hoped to find themselves after suit. In Statom the plaintiffs sought to enjoin the use by the club facilities until it admitted Negro boys to non-segregated participation in the club activities. This is precisely what the plaintiffs have already done in this case, and without the necessity of court intervention.
 
 
 18
 In Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972), plaintiff Irvis, while the guest of a member of the Moose Lodge, was refused service of an alcoholic beverage because of his race. In his suit, Irvis sought to have the lodge's liquor license revoked so long as it continued its discriminatory practices. A majority of the Supreme Court held that the issuance of a club liquor license to an otherwise purely private club did not create sufficient involvement by the private club with the state to render the actions of the local club 'state action' within the purview of the Equal Protection Clause. At the same time, it held invalid a state liquor regulation insofar as it was construed to compel a local lodge or members to comply with racially discriminatory provisions of its by-laws and constitutions. The court held that while plaintiff was entitled to such a decree, 'he was entitled to no more', Moose Lodge v. Irvis, supra, p. 179, 92 S.Ct. p. 1974. By the same token, if plaintiffs here were entitled to anything in their dispute with the defendant, it was at best the withdrawal of state action and participation in the activity complained of. This they had already accomplished before suit was started.
 
 
 19
 Since the complaint, therefore, did not state a claim upon which relief could be granted, it was properly subject to dismissal. We need not, therefore, reach the interesting questions of whether there is a rational basis for discrimination on account of sex in the baseball activities of children of this age, nor whether classifications based upon sex are inherently suspect. See Frontiero v. Richardson, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973); Kahn v. Shevin, 416 U.S. 351, 94 S.Ct. 1734, 40 L.Ed.2d 189 (decided April 24, 1974).
 
 
 20
 Affirmed.
 
 
 
 [1]
 Following oral arguments before this court there were published reports to the effect that defendant national organization planned to drop its boys-only policy. This prompted the court, through the clerk, to inquire of the parties if the case might therefore be disposed of by voluntary or stipulated dismissal. While no such agreement was reached, the defendant did indicate in response to the court's inquiry that it 'has eliminated and no longer enforces its former rule which rendered girls ineligible to participate. It has petitioned Congress for an amendment to its charter to declare that girls can play.' We do not consider this unilateral declaration, however, a sufficient basis for dismissal of the case for mootness, at least in the absence of agreement as to the facts on the part of appellants