Shirley Wohl Kram, J.
Counsel for the petitioner has made an application to this court for counsel fees pursuant to section 438 of the Family Court Act. An affirmation in opposition to the award of counsel fees was submitted by counsel for respondent. He contends that section 438 violates the Fifth and .Fourteenth Amendments to the Constitution of the United States since it denies male litigants due process of law and equal protection of the law.
Section 438 of the Family Court Act provides as follows: "In any proceeding under this article by a wife or former wife, against her husband, or former husband, including proceedings for herself and her children, or by a person on behalf of children only * * * the court may allow counsel fees at any stage of the proceeding, to the attorney representing the wife, former wife or person on behalf of children.” Section 438 is the successor to section 131 of the Domestic Relations Court Act. The latter was amended in September 1956, and authorizes the court to award counsel fees to the attorney representing the wife. Prior to that time, no statutory language existed which authorized the Family Court to award counsel fees. As stated in Ahearn v Ahearn (4 Misc 2d 1043, 1044-1045), "[UJntil * * * September 1, 1956 * * * services performed by attorneys in a Family Court proceeding for the *639 support of a wife and children could only be recovered in a common-law action on the theory of 'necessaries’.” See also Dravecka v Richard (267 NY 180) and Friou v Gentes (11 AD2d 124), which held that legal services rendered for a wife or child are necessaries.
Presumably, the intent of the Legislature in enacting the precursor of section 438 of the Family Court Act was to avoid the multiplicity of proceedings which were commenced against a husband stemming from the same action. In any event, this court fully recognizes that the husband’s liability for his wife’s counsel fees has its origin in the common law and is not entirely dependent upon statute.
Under the common law, a husband was bound to support his wife, unless there was a valid agreement for support entered into between the parties which relieved him from such obligation (Young v Valentine, 177 NY 347). The rationale for this obligation on the husband was, in part, due to the existing legal system at that time which gave control over a wife’s property and income to the husband. This was stated in Phillips v Phillips (1 AD2d 393, 394, affd 2 NY2d 742): "At common law it was held that 'the very being or legal existence of the woman is suspended during the marriage’ (1 Blackstone, Commentaries on the Laws of England 442 [1758]), and that the husband, as the one in control of his wife’s property and income, was obligated for her debts and her support.”
It is with this background that the court will consider the constitutionality of section 438.
When testing the constitutionality of a statute, certain basic principles must be noted. In Matter of Malpica-Orsini (36 NY2d 568, 570) where the court was faced with the constitutionality of section 111 of the Domestic Relations Law, the court stated: "a legislative enactment carries with it an exceedingly strong presumption of constitutionality; that, while this presumption is rebuttable, unconstitutionality must be demonstrated beyond a reasonable doubt; that every intendment is in favor of the statute’s validity; that the party alleging unconstitutionality has a heavy burden; and that only as a last resort will courts strike down legislative enactments on the ground of unconstitutionality.”
Respondent’s affirmation in support of his motion to declare section 438 unconstitutional is based on the premise that the section "commands dissimilar treatment for men and women who are similarly situated and thus is an arbitrary legislative *640 choice forbidden by the equal protection clause of the Fourteenth Amendment to the Constitution of the United States.”
In determining whether the legislation under attack is in vidlation of the Equal Protection Clause, it is necessary for this court to consider what justification exists for sex-based discrimination and what standard the court should apply in determining the statute’s constitutionality.
Traditionally, the Supreme Court has adhered to the rule that "the classification must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.” (Royster Guano Co. v Virginia, 253 US 412, 415.) In McGowen v Maryland (366 US 420, 425-426), this principle was applied as the "rational basis” test. In essence, the court was to determine whether the statute had a permissible purpose and whether the classifications drawn have a reasonable relation to such purpose.
More recently the Supreme Court has applied the "strict scrutiny test” to equal protection cases. This test has been applied whenever a fundamental interest (e.g., Shapiro v Thompson, 394 US 618) is at stake or the Government has employed a suspect classification. Classifications based upon race (Loving v Virginia, 388 US 1), alienage (Graham v Richardson, 403 US 365) and national origin (Oyama v California, 332 US 633) have been held to be inherently suspect and thus subject to close judicial scrutiny. The opinion in Frontiero v Richardson (411 US 677) convinces this court that sex is a suspect classification. At pages 686 to 687 of that opinion is stated the following: "since sex, like race and national origin, is an immutable characteristic determined solely by the accident of birth, the imposition of special disabilities upon the members of a particular sex because of their sex would seem to violate 'the basic concept of our system that legal burden should bear some relationship to individual responsibility.’ * * * And what differentiates sex from such nonsuspect statutes as intelligence or physical disability, and aligns it with the recognized suspect criteria, is that the sex characteristic frequently bears no relation to ability to perform or contribute to society. As a result, statutory distinctions between the sexes often have the effect of invidiously relegating the entire class of females to inferior legal status without regard to the actual capabilities of its individual *641 members.” Having determined that classifications based upon sex are inherently suspect, this court must now determine whether the statute commands "dissimilar treatment for men and women who are * * * similarly situated.” (Reed v Reed, 404 US 71, 77.)
In determining whether the classification under section 438 is valid, it must be found that it has a "fair and substantial relation to the object of the legislation.” (Reed v Reed, supra, p 76.) Justice Brennan in his dissent in Kahn v Shevin (416 US 351) stated that such "classifications can be sustained only when the State bears the burden of demonstrating that the challenged legislation serves overriding or compelling interests that cannot be achieved either by a more carefully tailored legislative classification or by the use of feasible, less drastic means.”
As stated previously, the enactment of section 438 has its tracings to the common law, wherein a husband was liable for his wife’s necessaries. In addition, a review of similar statutes indicates that they were adopted in order to enable the wife to carry on or defend the action or proceeding (2 Foster & Freed, Law and the Family, § 24:8, p 158). These statutes were all based on the concept that the husband was the "breadwinner” of the family and that his wife was an economically nonproductive person. The notion that women are still regarded as the center of home and family life was considered in Taylor v Louisiana (419 US 522), and footnote 17 (p 535) addressed itself to this point: "Statistics compiled by the Department of Labor indicate that in October 1974, 54.2% of all women between 18 and 64 years of age were in the labor force. United States Dept, of Labor, Women in the Labor Force (Oct. 1974). Additionally, in March 1974, 45.7% of women with children between the ages of 6 and 17, 67.3% of mothers who were widowed, divorced or separated were in the work force, while 51.2% of the mothers whose husbands were present in the household were in the work force. Even in family units in which the husband was present and which contained a child under three years old, 31% of the mothers were in the work force.” Furthermore, in Frontiero 411 US 677, (supra) the court vitiated the presumption that wives were completely dependent upon their husbands for their support. In that particular case, the court declared unconstitutional a statute which provided a male serviceman with dependents’ benefits but not the husband of a servicewoman unless she proved that *642 she supplied more than one half of her husband’s support. The court concluded that such overbroad generalizations * * * could not be tolerated and that the Government’s contention that the statute should be justified on the basis of administrative convenience could not stand. The court, in Weinberger v Wiesenfeld (420 US 636), likewise held that the Social Security Act provisions, which provided widows but not widowers with survivors’ benefits, violated the equal protection guarantees, relying on Frontiero (supra).
It is in this context that this court concludes that section 438 of the Family Court Act, which provides for awarding counsel fees only against males is an overbroad generalization which is in violation of the Equal Protection Clause. The court would like to point out, however, that it is not questioning whether males, as a class, should be liable for counsel fees in proceedings brought under article 4 of the Family Court Act. Rather, the issue that this court was faced with was whether counsel fees could only be awarded against males. It is solely in this respect that this court has found such language in the statute unconstitutional. For instance, it is more and more common in this day and age that fathers are awarded custody of their children. As such, they would have the uncontroverted right to bring an action against the mother of the children for the latter’s support, on the theory that a child’s mother is secondarily liable for her children’s support. However, section 438 of the Family Court Act would not entitle the father to an award of counsel fees, as it is currently drafted.
The court has also considered the impact that Kahn v Shevin (416 US 351) would have on the statute in question. That case involved the granting of a property tax exemption to all widows but not to widowers. While the dissent contended that such a statute violated the Equal Protection Clause, the majority decision held the Florida statute valid. However, that case can be distinguished from the facts herein because of the peculiar problems inherent in the tax field (see n 10, p 356).
Finally, the court would merely like to point out that while no counsel fees are being awarded to counsel for the petitioner herein, this has no reflection on the commendable work he performed on behalf of his client. At the same time, the court is fully aware of his rights to seek relief elsewhere (Levy v *643 Kaufman, 26 Misc 2d 57; Matter of Cassieri v Cassieri, 31 AD2d 927).