George A. ATHANSON, et al, in their official capacity and individually on behalf of themselves and all others similarly situated, Plaintiffs,

v.

Thomas J. MESKILL, et al, in their official capacity and individually, Defendants.

Civ. No. H–74–386.

United States District Court, D. Connecticut.

Sept. 30, 1981.

Dennis L. Pieragostini, Asst. Corp. Counsel, City of Hartford, Hartford, Conn., for plaintiffs.

Richard K. Greenberg, Robert L. Klein, Asst. Attys. Gen., Carl R. Ajello, Atty. Gen., Hartford, Conn., for defendants, Meskill & Brown.

Vincent J. Dowling, Cooney, Scully & Dowling, Hartford, Conn., for South Catholic High School Corp., St. Peter's Church and The St. Francis Hospital, intervening defendants.

Before LUMBARD, Circuit Judge, CLARIE, Chief Judge, and ZAMPANO, District Judge.

## RULING ON MOTION TO DISMISS

CLARIE, Chief Judge.

The defendants have moved to dismiss this action pursuant to Rule 12(b) of the Federal Rules of Civil Procedure. The plaintiffs, as members of the City Council of Hartford, the Mayor of the City, and the Assessor and the City Tax Collector, have brought suit in their official capacities and individually against the Governor and the Tax Commissioner of the State of Connecticut in their official and individual capacities. They claim that Connecticut General Statutes § 12–81 and the amendments thereto unconstitutionally exempt a disproportionate percentage of land from the Hartford property list.

### Jurisdiction

Jurisdiction is invoked pursuant to 28 U.S.C. § 1343(3). A three-judge Court has been convened. See 28 U.S.C. § 2281 (repealed Pub.L.No. 94–381, § 4, 90 Stat. 1119).

### Facts

Connecticut General Statute § 12–81 sets forth 61 separate classifications of property which are exempt from taxation. The list includes property of the United States, State property, municipal property, houses of religious worship, hospitals and sanitoriums, and property used for scientific, educational, literary, historical and charitable purposes.

The plaintiffs claim that one of the effects of this statute is that over 4.7% of the entire assessed value of tax-exempt property in the State of Connecticut, exclusive of streets and highways, is in the City of Hartford. They also note that the City of Hartford comprises less than one-half of one per cent (.0037) of the entire land area of Connecticut, and that the City of Hartford must provide services to 4.4% of Connecticut's population. By comparing these three figures, the plaintiffs conclude that the tax exemption laws are unconstitutional in that they result in a disproportionate amount of tax-exempt property in the City of Hartford.[1]

These exemptions are unconstitutional, according to the plaintiffs, because they deprive the inhabitants of Hartford of an adequate and equitable taxable property base, thus limiting the City's ability to raise

1. The plaintiffs also claim that the assessed value of tax-exempt property in Connecticut is 20.19%, while in Hartford the assessed value of tax-exempt property is over 56% of the assessed value of all taxable property.

sufficient funds for necessary municipal services. The plaintiffs argue that this inequity causes the City to assume costs of municipal services grossly disproportionate to that assumed by contiguous towns, in violation of the due process and equal protection clauses of the Fourteenth Amendment to the United States Constitution. The plaintiffs further contend that the tax exemption laws are unconstitutional in that they violate the Ninth Amendment to the United States Constitution. They seek to enjoin the defendants from enforcing and executing the tax exemption laws "insofar as such laws or any of them operate unconstitutionally...."

The defendants reply, *inter alia,* that the plaintiffs lack the requisite standing to maintain this action; that the action should be dismissed as "wholly insubstantial and frivolous;" that the plaintiffs' case is a nonjusticiable political question; and that the Court lacks jurisdiction, because the amount in controversy is less than the requisite ten thousand dollars. *See* 28 U.S.C. § 1331.

### Discussion of the Law

For purposes of this motion to dismiss, the plaintiffs' allegation that § 12–81 has a disproportionate impact upon the City of Hartford is taken as admitted. *Jenkins v. McKeithen,* 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969).

■ Any inquiry into the propriety of a state taxation scheme, as administered within its jurisdiction, is subject to the established principle that liberal deference must be accorded to such laws.

"It is inherent in the exercise of the power to tax that a state be free to select the subjects of taxation and to grant exemptions. Neither due process nor equal protection imposes upon a state any rigid rule of equality of taxation .... This Court has repeatedly held that inequalities which result from a singling out

of one particular class for taxation or exemption, infringe no constitutional limitation. [A legislature] may make distinctions of degree having a rational basis, and when subjected to judicial scrutiny they must be presumed to rest on that basis if there is any conceivable state of facts which would support it." *Carmichael v. Southern Coal & Coke Co.,* 301 U.S. 495, 509, 57 S.Ct. 868, 872, 81 L.Ed. 1245 (1937).

*See Independent Warehouses, Inc. v. Scheele,* 331 U.S. 70, 86, 67 S.Ct. 1062, 1071, 91 L.Ed. 1346 (1947); *Wall & Ochs, Inc. v. Grasso,* 469 F.Supp. 1088, 1092 (D.Conn. 1979); *Bassett v. Rose,* 141 Conn. 129, 134, 104 A.2d 212 (1954) ("Legislatures have broad powers of taxation. They may prescribe the conditions, means and methods of the assessment, levy and collection of taxes .... They may select one class of property to be taxed and exempt another"). *See also San Antonio Independent School District v. Rodriguez,* 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973). In *San Antonio,* the Supreme Court reaffirmed the principle stated in *Carmichael*:

"We have here nothing less than a direct attack on the way [the state] has chosen to raise and disburse state and local tax revenues .... [A]ppellees would have the Court intrude in an area in which it has traditionally deferred to state legislatures. This Court has often admonished against such interference with the State's fiscal policies under the Equal Protection Clause." *San Antonio Independent School District v. Rodriguez,* 411 U.S. 1, 40, 93 S.Ct. 1278, 1300, 36 L.Ed.2d 16 (1973).

*See also Ohio Oil Co. v. Conway,* 281 U.S. 146, 159, 50 S.Ct. 310, 313–14, 74 L.Ed. 775 (1930).

■ Applying these general principles to the facts of this case, it is evident that the plaintiffs' contentions present no substantial federal question.[2] The statute in ques-

---

2. *See Pitts v. Department of Revenue for the State of Wisconsin,* 333 F.Supp. 662, 669 (E.D. Wis.1971) (three-judge district court). *E. g., Kahn v. Shevin,* 416 U.S. 351, 94 S.Ct. 1734, 40 L.Ed.2d 189 (1974); *Walz v. Tax Commissioner,* 397 U.S. 664, 90 S.Ct. 1409, 25 L.Ed.2d 697 (1970).

tion is facially neutral; it is not directed at the City of Hartford. It is, rather, a series of tax exemptions which are applicable to those properties that meet the statutory description statewide. Plaintiffs' conclusory allegation that the disproportionate impact against Hartford is detrimental to the City fails to reflect an evaluation of a host of opposing considerations.

For example, the presence of hospitals, cultural institutions, and governmental offices may well be fundamental reasons that taxable businesses and industries choose to locate in Hartford. The objection that a disproportionate portion of Hartford's land area is devoted to tax-exempt highways, "which serve all of the inhabitants of the State of Connecticut," is clearly insubstantial. The burden imposed by highway exemptions may well be balanced by the benefit of optimum access to the City. This access could easily be viewed as a source of financial benefit to the City in that it, too, might encourage business and industries to locate in Hartford.[3] The economic and demographic research necessary to identify the respective benefits and burdens of tax exemption, as well as the concomitant social factors which must be evaluated, are considerations which are inescapably legislative. *See San Antonio Independent School District v. Rodriguez, supra,* 411 U.S. at 58, 93 S.Ct. at 1309. ("The consideration and initiation of fundamental reforms with respect to state taxation and education are matters reserved for the legislative processes of the various States, and we do no violence to the values of federalism and separation of powers by staying our hand.") The plaintiffs have failed to confront, or even show an awareness of, the many considerations which the legislature must balance in deciding upon the propriety of a tax exemption. *See Lehnhausen v. Lake Shore Auto Parts Co.,* 410 U.S. 356, 365, 93 S.Ct. 1001, 1006, 35 L.Ed.2d 351 (1973).[4] The plaintiffs have shown no recognition of the legislature's "affirmative policy that considers these [exempt] groups as beneficial and stabilizing influences in community life and finds [these] classification[s] useful, desirable, and in the public interest." *Walz v. Tax Commissioner,* 397 U.S. 664, 673, 90 S.Ct. 1409, 1413, 25 L.Ed.2d 697 (1970).

It seems clear, therefore, that Connecticut's tax exemption classifications are not "so irrational as to be invidiously discriminatory," *San Antonio School District v. Rodriguez, supra,* 411 U.S. at 55, 93 S.Ct. at 1308; rather, we find they "rest upon some ground of difference having a fair and substantial relation to the object of the legislation." *Reed v. Reed,* 404 U.S. 71, 76, 92 S.Ct. 251, 254, 30 L.Ed.2d 225 (1971), quoting *Royster Guano Co. v. Virginia,* 253 U.S. 412, 415, 40 S.Ct. 560, 561–62, 64 L.Ed. 989 (1920). *Cf., e. g., Kahn v. Shevin,* 416 U.S. 351, 94 S.Ct. 1734, 40 L.Ed.2d 189 (1974) (annual $500 property tax exemption for widows but not widowers upheld) *Lehnhausen v. Lake Shore Auto Parts Co., supra,* (ad valorem tax exemption for personalty of individuals but not of corporations and similar entities upheld); *Allied Stores of Ohio, Inc. v. Bowers,* 358 U.S. 522, 79 S.Ct. 437, 3 L.Ed.2d 480 (1959) ad valorem tax exemption for merchandise in storage belongings to non-residents, but not residents, sustained.)

---

**3.** The plaintiffs also object to the fact that "Sixty-one (61%) of Hartford's work force are nonresidents, many of whom are employed by tax-exempt institutions." Here, as in their other objections, the plaintiffs fail to recognize the benefits which may accrue from having a large non-resident work force. It is implicit from the plaintiffs' allegations that many of these non-residents are employed by *taxable* institutions. Those institutions pay property taxes, their work force thus supports the City indirectly, yet these individuals place no burden at all on the City's school system or welfare rolls. These considerations which have escaped the plaintiffs' attention may have figured in the legislative theory that led to the tax exemptions.

**4.** The Court notes, in addition, that there can be no legitimate claim that the legislature has neglected its responsibility to review and adjust this important statute. Section 12–81 is replete with evidence of legislative review. It has been evaluated and amended every year for the past ten years.

While it may be true that the legislatures could have drafted the statute differently, or even more wisely, these issues are political in nature and pose questions which are best left for the judgment of the legislative body. This Court will not substitute its judgment for that of the legislature. The plaintiffs must pursue their claim before that body. Only the legislature is suited to discover and manage the standards for resolving the plaintiffs' claim. Only the legislature can make the initial policy determinations which must precede the granting or withdrawal of tax exemptions, or the increase or decrease in State reimbursements to the City. *Cf. Board of County Commissioners v. Seber*, 318 U.S. 705, 718, 63 S.Ct. 920, 927, 87 L.Ed. 1094 (1943) (Federal statutes exempting certain Indian-owned property from state taxation are valid and constitutional exercises of Congressional power. "The fact that the Acts withdraw lands from the tax rolls and may possibly embarass the finances of a state or one of its subdivisions is for the consideration of Congress, not the courts."). *See also Baker v. Carr*, 369 U.S. 186, 217, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962); Scharpf, *Judicial Review and the Political Question: A Functional Analysis*, 75 Yale L.J. 517, 567–73 (1966).

Accordingly, the defendants' motion to dismiss the action is granted.

SO ORDERED.