**Midge SULLIVAN, Appellant,**

v.

**STATE of Oklahoma, ex rel.
OKLAHOMA TAX COM-
MISSION, Appellee.**

**No. 76465.**

Court of Appeals of Oklahoma,
Division No. 2.

June 30, 1992.

Certiorari Denied Dec. 2, 1992.

William J. Robinson, Stanley F. Carroll, Shirk, Work, Robinson, Work & Mitchell, Oklahoma City, for appellant.

Stanley P. Johnston, Robert B. Struble, Michael L. Brown, Oklahoma City, for appellee.

BRIGHTMIRE, Judge.

This question is presented for review: Does a statute which grants an income tax exemption only to the recipients of state and federal governmental retirement benefits impermissibly discriminate against recipients of private nongovernmental retirement benefits?

The trial court concluded it did not and granted the defendant a summary judgment. We affirm.

## I

The facts are undisputed and relatively simple. Plaintiff Midge Sullivan is a retired Southwestern Bell Telephone Company employee residing in Oklahoma City, Oklahoma. In June of 1990 she filed this lawsuit against the State of Oklahoma asking for a judgment declaring that the provisions of 68 O.S.Supp.1989 § 2358(D)(9) [1] unconstitutionally discriminate against her by failing to grant her the same income tax exemption of $5,500 on her retirement benefits which it grants to retired state and federal public employees. This unequal treatment, she contends, is "grossly, egregiously and invidiously discriminatory" and is therefore violative of the Equal Protection Clause of the federal constitution's Fourteenth Amendment and Art. II, § 2 and Art. V, § 59, of our state constitution.

The state promptly filed an answer denying that any provision of subject statute violated either the federal or state constitutions and asked the court to reject the plaintiff's request.

In August the battle of affidavits began when the plaintiff moved for a summary judgment to which she attached a sworn statement. In it she states that she filed a state tax return for the taxable year 1989 disclosing income earned in Oklahoma and paid "a tax in the amount shown on said return ... a portion of which being payable

1. Title 68 O.S.Supp.1989 § 2358(D)(9) reads:

"Retirement benefits not to exceed Five Thousand Five Hundred Dollars ($5,500.00), which are received by an individual from the civil service of the United States, any component of the Armed Forces of the United States, the Oklahoma Public Employees Retirement System, the Teachers' Retirement System of Oklahoma, the Oklahoma Law Enforcement Retirement System, the Oklahoma Firefighters Pension and Retirement System, the Oklahoma Police Pension and Retirement System, the employee retirement systems created by counties pursuant to Sections 951 et seq. of Title 19 of the Oklahoma Statutes, the Uniform Retirement System for Justices and Judges, the Oklahoma Wildlife Conservation Department Retirement Fund, the Oklahoma Employment Security Commission Retirement Plan, or the employee retirement systems created by municipalities pursuant to Sections 48–101 et seq. of Title 11 of the Oklahoma Statutes shall be exempt from taxable income."

by reason of the foregoing pension benefits." [2]

In opposition to the motion the state filed an affidavit executed by Secretary of Finance and Revenue Alexander Holmes. He stated he was familiar with the longstanding legislative policy of granting exemptions from income tax on all or a portion of retirement benefits paid to state and local government employees. There was, he said, a twofold public policy consideration underlying the enactment of the income tax exemption in question. He explained that these were: (1) To "reward" public service employees for service rendered "often at average rate of pay less than they could have received in the private sector"; and (2) to help make up an "overall benefit package" designed to make public service "more competitive and attractive in the employment, motivation and retention of a competent and productive public work force."

The plaintiff then countered with a response affidavit executed by the assistant administrator of the State Office of Personnel Management, attached to which was a copy of the 1990 Annual Compensation Report.[3] In it the administrator concluded that: (1) "Overall the entry level salaries of state employees remain competitive with the private market"; (2) state-offered fringe benefits are slightly higher than those offered in the private sector; (3) public employee benefits range "from 5 to 10 percent higher than [those offered by] the private market"; and (4) state contributions for retirement "exceed those in the private sector by 8 percent." [4]

The showdown came on September 28, 1990, when the trial court heard the plaintiff's motion. After reviewing the record and considering the argument of the parties the judge concluded that the assailed statute was constitutional. Consequently, he declined to grant the plaintiff a judgment and instead entered one in favor of the state. Underlying the summary adjudication were these findings: (1) Section 2358(D)(9) grants a $5,500 income tax exemption to certain governmental employees receiving job-related retirement benefits; (2) the plaintiff's retirement benefits were not within the scope of § 2358(D)(9); and (3) "the challenged exemptions are part of the benefits provided by the legislature for governmental employment, and that these benefits are rationally related to the state's interest in hiring and retaining of qualified government employees."

The plaintiff appeals.

## II

Her first contention is that there is no rational basis for the disparate tax treatment of retirement benefits of public and private retirees thus depriving her of her constitutional right to equal protection of the law.[5]

■ Preliminarily, it will be helpful to review some relevant principles of law. Although the Equal Protection Clause of the Fourteenth Amendment is applicable to the states in the exercise of their taxing pow-

---

**2.** It is uncontroverted that the plaintiff is adversely affected by subject statute and that this action involves a justiciable controversy within the purview of the Declaratory Judgment Act. See *State ex rel., Bd. of Examiners in Optometry v. Lawton*, 523 P.2d 1064 (Okl.1974); *Gordon v. Followell*, 391 P.2d 242 (Okl.1964).

**3.** 74 O.S.1991 § 840.5(4) requires the administrator of the office of personnel management to annually "[c]onduct an analysis of the rates of pay prevailing in the state; in the public and private sectors for comparable jobs and report the findings to the Governor, the President Pro Tempore of the Senate, and the Speaker of the House of Representatives no later than November 1 of each year. Such analysis shall include

all forms of compensation including fringe benefits."

**4.** Although it may appear at this point that there exist controverted issues of fact which require the denial of summary judgment, it will later become evident that such conflicts are in regard to immaterial facts.

**5.** U.S. Const. amend. XIV reads in relevant part:
"No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."

er,[6] the state legislatures still enjoy broad discretion to enact tax programs deemed to accommodate local needs.[7] Such tax laws are presumed to be constitutional—a presumption which can be overcome only "by the most explicit demonstration that a classification is a hostile and oppressive discrimination against particular persons and classes."[8] And if a classification is not manifestly arbitrary or capricious it is not constitutionally infirm.[9]

■ Turning now to the plaintiff's argument it is, of course, rather obvious from the nature of her first proposition, as well as her supporting argument, that she acknowledges that through the years the courts have applied the following traditional test to determine whether various discriminatory laws run afoul of the Fourteenth Amendment's Equal Protection Clause, i.e., whether the challenged law is founded on a classification which is either inherently reasonable or rationally related to advancing a legitimate governmental interest, purpose or policy.[10] If the answer is in the affirmative, the law does not run afoul of the Equal Protection Clause.

Hence, the plaintiff's challenge here is premised on the claim that the state's employee-related retirement policy is neither reasonable nor rationally related to advancing a legitimate governmental interest, purpose or policy. She predicates this conclusion on her affidavit evidence which she says establishes that: (1) "State employees are now worse off with the raising of the exemption lid" evidently referring to the severe reduction of the erstwhile tax exemption in 1989; and (2) "[i]t has been demonstrated State jobs are for the most part more attractive than private sector jobs thus negating a need to further induce people to government service."

In this same vein the plaintiff threads the argument further by emphasizing the earlier drastic reduction of the public servants' tax exemption, which, she says, causes them, including judges, to be worse off than they were before, so that the value of the exemption in inducing new employees to seek public service jobs is virtually non-existent.

The foregoing simplistic thesis is founded on the specious idea that though the tax exemption was constitutional when it was first enacted, it has somehow become unconstitutional because of the later development of circumstances requiring its reduction. In other words, the plaintiff seems to look at the existing exemption in terms of its impact on current hiring and overlooks the effect it has had on past hirings and what effect it may have on future labor markets. Insofar as the plaintiff's contention rests on the idea that a longtime employee could not have been induced to go to work for the state and continue in its employment by reason of the tax exemption because the exemption has lately been drastically reduced, it is without merit.

This court will take judicial notice that retirement benefits play a significant role in the recruitment and retention of qualified employees in both the public and private sectors. A tax exemption of retirement benefits is a common inducement offered by state governments. Merely because changes occur in the state retirement laws to the detriment of competent public employees—changes which adversely affect many who have faithfully served the state through the years only to find that the promised retirement benefits which attracted them were suddenly taken away by reason of an unforeseen United States Supreme Court decision coupled with a decline in state revenue secondary to an economic recession—does not have the effect of ren-

**6.** *Hartford Steam Boiler Inspection & Ins. Co. v. Harrison,* 301 U.S. 459, 57 S.Ct. 838, 81 L.Ed. 1223 (1937).

**7.** *Madden v. Kentucky,* 309 U.S. 83, 60 S.Ct. 406, 84 L.Ed. 590 (1940).

**8.** *Id.* at 88, 60 S.Ct. at 408.

**9.** *Welch v. Henry,* 305 U.S. 134, 59 S.Ct. 121, 83 L.Ed. 87 (1938).

**10.** *See Kahn v. Shevin,* 416 U.S. 351, 94 S.Ct. 1734, 40 L.Ed.2d 189 (1974); *Oklahoma Tax Comm'n v. Smith,* 610 P.2d 794 (Okl.1980).

dering the lesser exemption unconstitutional.[11]

## III

■ Next the plaintiff advances the proposition that the 1990 Annual Compensation Report of the Personnel Management Office "negates the 'rational basis' for disparate treatment of public and private employees."

The argument is that the sworn report of the personnel management office—which indicated, it will be recalled, that during 1990 the benefits received by public employees were a little higher than those offered by the private sector—contradicts the affidavit of Secretary Holmes offered by the state, which in substance said that the tax exemption granted public service retirees was a "reward" for service "often at average rates of pay less than they could have received in the private sector" and was part of the state's "overall benefit package."

There are at least two things wrong with the plaintiff's rationale. First of all, "one swallow doth not a summer make." The mere fact that public employees may have happened to receive a little more in the way of fringe benefits in 1990 than was generally received by private sector employees does not say anything about the situation in prior years, nor is it clear just how such disparity "negates the 'rational basis'" theorum. Secondly, even if the legislature in its wisdom deems it necessary to grant public employees greater benefits than those generally received by workers in the private sector, it does not follow merely from that fact alone that the public-private classification must be condemned as arbitrary or oppressively discriminatory. One has to consider the classification from the standpoint of long periods of time with due regard to the effects of evolving business cycles.

As a general proposition it can be said that during downswings of the economy public employees are more apt to have a slight advantage in terms of collateral benefits, but during more prosperous times those employed in the private sector are more likely to have the advantage. And, of course, the supply and demand for workers is directly affected by such economic conditions. The point is that the legislature must set employee benefit policy for the short term with concern for the effect on the long term. Consequently, it is clear that the 1990 report by the personnel management office is not evidence that subject tax exemption for retired state employees is based on an irrational classification or one which is unreasonable or arbitrary.

## IV

The thrust of the plaintiff's next contention is that the recent holding of the United States Supreme Court in *Davis v. Michigan Department of Treasury*, 489 U.S. 803, 109 S.Ct. 1500, 103 L.Ed.2d 891 (1989), supports the position she has taken in her first two propositions.

---

**11.** While it has no bearing on the legal aspects of the specific issue posed by the plaintiff, it should be a matter of solace to her that she enjoys participation in a very stable and well-funded retirement plan which—because it is protected by contract law, union power, and because her employer is less subject to the adverse effects of economic downswings than most other enterprises due to the essential service it renders and its monopolistic stature—appears to be impervious to economic changes. *See generally Turpen v. Oklahoma Corp. Comm'n,* 769 P.2d 1309 n. 76 (Okl.1988) (Brightmire, S.J., dissenting). Moreover, while she was working she received certain other special benefits in the nature of discounts, etc., not enjoyed by the public at large—a type of benefit most employers extend to their employees. And she still receives them. Can she say all such bene-

fits did not induce her to seek employment with Southwestern Bell and continue in its employ for a long term?

In contrast, the public servant gets no discount on state services or any other benefit not bestowed by the legislature. Certainly it is not hard to imagine that the tax exemption originally sprang from the same philosophy that has long motivated private industry to give discounts, free rides on airplanes and the like to their employees—that the state needed some comparable form of benefit to induce the acceptance of state employment and to encourage the rendition of dependable, efficient service. Finally, it is important to remember that the benefits received by public servants are subject to legislative changes which in turn are ultimately dependent on a healthy economy.

We disagree. To begin with there is a factual dissimilarity with respect to the classification complained of here and that challenged in the Michigan case. But, more importantly, *Davis* involved the construction of a federal statute—4 U.S.C. § 111 (1985), which authorized the states to tax the compensation of federal employees "if the taxation does not discriminate ... because of the source of the pay or compensation." True the court briefly considered and disposed of a state argument based on the Equal Protection Clause, but the gist of its decision is this: "[W]e conclude that the Michigan Income Tax Act violates principles of intergovernmental tax immunity by favoring retired state and local government employees over retired federal employees." *Davis*, 489 U.S. at 817, 109 S.Ct. at 1508. And there is nothing in the Court's equal protection discussion to support the plaintiff's advocacy in this case.

### V

The plaintiff last contends that § 2358(D)(9) offends Art. II, § 2, and Art. V, § 59 of the Oklahoma Constitution. Although she makes this argument in her brief in chief, no such allegation of error is found in the petition in error. We therefore decline to consider it. *Greene v. Circle Ins. Co.*, 557 P.2d 422 (Okl.1976).

### VI

For the foregoing reasons we affirm the summary judgment.

BOUDREAU, J., concurs.

RAPP, P.J., concurs in result.

RAPP, Presiding Judge, concurring in result.

The dispositive issue here presented is this—shall private sector retirees receive the same tax exemptions as the recipients of state governmental retirement programs. The state says no and the trial court agreed.

The simple response to this appeal is that the trial court is correct. The exemption classification appealed is not based on alienage, race, religion, or national origin, and is thus not suspect. Moreover, the exemption accomplishes the purpose intended. This matter was put to rest by the United States Supreme Court in *Kahn v. Shevin*, 416 U.S. 351, 94 S.Ct. 1734, 40 L.Ed.2d 189 (1974), a Florida matter which dealt with a property tax exemption given widows and not widowers. The Supreme Court there upheld the state statute granting differing treatment. Further, under traditional equal protection principles, a state retains broad discretion to classify as long as there is a reasonable basis for it, even in the areas of economics and social welfare. *See Dandridge v. Williams*, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970). I would affirm the trial court.