Dear Representatives, Tony Kouba,
¶ 0 This office has received your request for an Attorney General Opinion, in which you ask, in effect, the following question:
Do the provisions of the Oklahoma Constitution Article X, §9(c) and Article X, § 10, which permit voters of an independentschool district to vote to impose building fund millages andeducational millages upon property owners in the district,violate the Equal Protection Clause of the United StatesConstitution when:
 The additional millage revenues are used not only to educatestudents from the independent school district but are also usedin providing a high school education to students from anelementary school district; and property owners in the elementaryschool district do not contribute any building fund revenue tothe independent school district?
 I. FUNDING SCHEME
¶ 1 In order to answer the question it is necessary to discuss Oklahoma's school funding scheme. School districts are classified as either independent or elementary school districts. Title 70O.S. 1991, § 5-103[70-5-103] defines elementary school districts as follows:
 Elementary school districts shall offer grades kindergarten through eight and are those which have not met the minimum standards for, and have not been designated as, independent school districts by the State Board of Education. On and after July 1, 1991, every place in the Oklahoma Statutes which refers to "dependent school district" shall mean "elementary school district".
¶ 2 Title 70 O.S. 1991, § 5-102[70-5-102] states:
 All independent school districts in Oklahoma shall be those which shall have maintained during the previous year a school offering high school subjects fully accredited by the State Board of Education.
¶ 3 The State funding scheme for public education begins in the Oklahoma Constitution. Article I, § 5 of the Oklahoma Constitution provides for the establishment and maintenance of a system of public schools within the State:
 Provisions shall be made for the establishment and maintenance of a system of public schools, which shall be open to all the children of the state. . . .
¶ 4 Article XIII, § 1 of the Oklahoma Constitution places the obligation of establishing and maintaining a school system upon the Legislature. In its effort to carry out this duty, the Legislature has designed a system of financing public education which relies primarily on two sources of revenue — local and State.
¶ 5 The Legislature designed State Aid "to allow the State and the local school districts to work together to provide full educational opportunities for every child in Oklahoma." FairSchool Finance Council of Oklahoma v. State, 746 P.2d 1135, 1140
(Okla. 1987). The State sources of revenue include various taxes designated for school purposes, proceeds from the permanent school fund, and monies allocated for specific programs or expenditures. 70 O.S. 1991, §§ 18-101[70-18-101] to 18-125, as amended. This funding is based on Average Daily Attendance (ADA) and Average Daily Membership (ADM) in the particular school district. Consequently, the State sends funding to each district based upon the number of students legally attending school in that district.
¶ 6 The State also pays a Transportation Supplement to each school district. This funding is based on the "average daily haul," which is "the number of children in a district who are legally transported and who live one and one-half (11/2) miles or more from school." 70 O.S.Supp. 1995, § 18-200[70-18-200](B)(2)(a). With the Legislature's funding scheme, the independent school district receives the same amount of State funding for high school students transferring from elementary school districts as for students attending high school that live in the independent school district.
¶ 7 The greatest local sources of revenue for financing public education are the various ad valorem taxes levied on the real and personal property within the school districts. Each county must levy a tax of four mills on the dollar valuation of all taxable property in the county for school purposes. Okla. Const. art. X, § 9(b). Unless a different method is provided by law, theproceeds of this levy must be apportioned among the county'sschool districts based upon the legal average daily attendancefor the preceding school year. The independent school district receives funding for ad valorem taxes based on the average daily attendance which includes elementary school district transfers within the county. Okla. Const. art. X, § 9(b).
¶ 8 Voters of the school districts may choose to levy additional taxes. "Upon certification of a need by the board of education," the voters of any school district may levy an additional tax of up to "fifteen (15) mills on the dollar valuation of all taxable property in the district." Okla. Const. art. X, § 9(c). Additional ad valorem taxes may also be approved by the district's voters for education-related purposes. Okla. Const. art. X, § 9(d)-(d-1). Article X, § 10 of the Oklahoma Constitution allows a levy of up to five mills for a building fund, which may be used for erecting or repairing school buildings and for purchasing furniture. In the Legislature's public school funding scheme these voter-imposed additional levies are the only areas of funding in which the independent school districts may choose to levy taxes.[1]
¶ 9 Your question challenges the constitutionality of the system of financing public education in Oklahoma. Before analyzing the school funding law, it should be noted that the Oklahoma Supreme Court has consistently held that legislative enactments are presumed to be constitutional and will be upheld unless "clearly, palpably, and plainly inconsistent with the Constitution." Kimery v. Public Service Company, 622 P.2d 1066,1069 (Okla. 1980). Whenever possible statutes should be construed so as to uphold their constitutionality. City of Norman v.Liddell, 596 P.2d 879, 882 (Okla. 1979). Therefore, 70 O.S.1991, § 18-101[70-18-101] to 18-125, as amended, must be deemed constitutional unless it clearly violates a constitutional provision.
 II. EQUAL PROTECTION ANALYSIS
¶ 10 Under an equal protection analysis the issue is whether it is a violation of the Fourteenth Amendment to tax citizens of an independent school district pursuant to Article X, §§ 9(c) and 10
of the Oklahoma Constitution when a portion of the tax money collected will be expended on high school students coming into the district from elementary school districts whose citizens do not pay taxes to the independent school district.
¶ 11 The Equal Protection clause requires that no state "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV.
 The United States Constitution and the Oklahoma Constitution each contain built-in anti-discrimination components which afford protection against unreasonable or unreasoned classifications which serve no important governmental interests.
Association for Equitable Taxation v. Oklahoma City,901 P.2d 800, 805 (Okla. 1995).
¶ 12 On the broad issue of state taxation, a 1992 Court of Appeals case stated that while the Equal Protection Clause is applicable to the states in the exercise of their taxing powers, "the state legislatures still enjoy broad discretion to enact tax programs deemed to accommodate local needs." Sullivan v.Oklahoma Tax Commission, 841 P.2d 619, 622. (Okla.App. 1992).
¶ 13 In the school financing scheme, taxpayers are classified according to the school district in which they live. The Equal Protection Clause is not implicated unless "similarly situated people" are treated differently. E.g., McDonald v. Board ofElection Commission of Chicago, 394 U.S.802, 808 (1969). The fact that the independent school district taxpayers and the elementary school district taxpayers are not similarly situated is readily apparent. The independent school district taxpayers enjoy the benefits of having a high school in the district which is easily accessible to the district's students. Elementary school district taxpayers have no voice regarding high school matters in the independent school district. Because independent school district taxpayers and elementary school district taxpayers are not similarly situated, the protection of the Equal Protection Clause is not even implicated in this situation.
¶ 14 However, even if the district taxpayers were said to be similarly situated, the Equal Protection Clause merely requires any material differences in treatment be rationally based. The rational-basis standard is, as the United States Supreme Court has said, a "relaxed standard":
 We turn then to examine this state classification under the rational-basis standard. This inquiry employs a relatively relaxed standard reflecting the Court's awareness that the drawing of lines that create distinctions is peculiarly a legislative task and an unavoidable one. Perfection in making the necessary classifications is neither possible nor necessary. Such action by a legislature is presumed to be valid.
Massachusetts Board of Retirement, v. Murgia, 427 U.S. 307,314 (1976) (citations omitted).
¶ 15 In McGowan v. Maryland, 366 U.S. 420 (1961), the United States Supreme Court, in determining the validity of Maryland's Sunday closing laws, had occasion to comment on the Equal Protection Clause's rational-basis standard, and in so commenting the Court noted that (1) in establishing distinctions the states are afforded a "wide-scope of discretion"; (2) a classification is only struck down if it rests on grounds wholly irrelevant to the achievement of a state objective; (3) distinctions are presumed valid; and (4) statutory discrimination will not be set aside if any state of facts reasonably "may be conceived" to justify the distinction. The Court stated:
 Although no precise formula has been developed, the Court has held that the Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which affect some groups of citizens differently than others. The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.
McGowan, 366 U.S. at 425-426 (emphasis added).
¶ 16 In applying this "relaxed" rational-basis standard to the case at hand, it is easy to "conceive" of legitimate reasons for the Constitution's different treatment of elementary and independent school district taxpayers. Independent school district taxpayers enjoy the convenience of having a high school easily accessible to the district's students. With elementary school districts there is no duplication of effort in the education of high school students. The different treatment may be a recognition that elementary district taxpayers have no influence in the governing of the independent school district. They cannot vote for board members or vote on bond or ad valorem tax issues.
¶ 17 The Oklahoma Supreme Court has stated that the "14th Amendment's Due Process and Equal Protection clauses do not impose an iron-clad rule of equality which prohibits the flexibility and variety that are appropriate to schemes of taxation." McLoud Telephone Company v. State Board ofEqualization, 655 P.2d 1037, 1040 (Okla. 1982). There being ample conceivable justification for the Constitution's different treatment of independent school district taxpayers and elementary school district taxpayers, the challenged provision is clearly rationally based and thus does not violate the Equal Protection Clause.
¶ 18 The Oklahoma Constitution, Article XIII, § 1 commands the Legislature to "establish and maintain a system of free public schools." The Legislature, through the statutory provisions in Title 70, has accomplished this mandate. Upon certification of need by the board of education, the voters of the school district may choose to levy an additional tax for education related purposes. Voters may also levy additional tax for building, remodeling and furniture. After an examination of the funding scheme, this office cannot find any grounds for concluding that the statutory provisions in Title 70 are violative of the provisions of the Equal Protection Clause of theFourteenth Amendment of the United States Constitution. Nor can this office find any reason to conclude that Article X, § 9 of the Oklahoma Constitution is contrary to the provisions of the United States Constitution.
¶ 19 It is, therefore, the official Opinion of the AttorneyGeneral that:
 The provisions of Article X, § 9(c) and Article X, § 10 of theOklahoma Constitution which permit voters of an independentschool district to vote to impose educational millages andbuilding fund millages upon property owners in the district, donot violate the Equal Protection Clause of the United StatesConstitution when:
 The additional millage revenues are used not only to educatestudents from the independent school district but are used alsoto provide a high school education to students from an elementaryschool district, AND
 Property owners in the elementary school district do notcontribute any building fund revenue to the independent schooldistrict.
W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
L. MICHELLE STEPHENS ASSISTANT ATTORNEY GENERAL
[1] These taxes may include the additional tax of fifteen mills on the dollar valuation of all taxable property in the district, additional ad valorem taxes approved by the district's voters for education-related purposes, and the additional levy of up to five mills for a building fund.